736 F.2d 142
 15 Fed. R. Evid. Serv. 1654
 UNITED STATES of America, Appellee,
v.
Walney Barrick BODDEN, Appellant.
UNITED STATES of America, Appellee,
v.
Jose Maria Mosquera CANIZALES, Appellant.
UNITED STATES of America, Appellee,
v.
Walter Esquerra GONZALES, Appellant.
UNITED STATES of America, Appellee,
v.
Emerio Cossio CORDOBA, Appellant.
UNITED STATES of America, Appellee,
v.
Hugo Pena PENA, Appellant.
 Nos. 83-5073 to 83-5075, 83-5079 and 83-5080.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 9, 1984.
Decided June 7, 1984.
 
 P.D. Aiken, Fort Lauderdale, for appellants.
 Michael A. Cauley, Asst. U.S. Atty., Pittsburgh, Pa. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.
 Before HALL and ERVIN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 In a joint trial, the five appealing defendants were convicted of possession of marijuana while on board a vessel subject to the jurisdiction of the United States, possession of marijuana knowing that it would be unlawfully imported into the United States, and conspiracy to commit the two substantive offenses.
 
 
 2
 We find no merit in their appeals, and affirm.
 
 I.
 
 3
 The sixty foot vessel, Bonita, when approximately ninety miles off the Virginia coast, was sighted by a Coast Guard patrol plane. The Coast Guard plane kept the Bonita under observation for the next four and one-half hours as the Bonita continued on a north-northwesterly course.
 
 
 4
 At approximately 8 o'clock that evening, the Coast Guard cutter Point Huron intercepted the Bonita. Lieutenant Fidelio, the cutter's commanding officer, established radio contact with the Bonita. Over the radio, the defendant Bodden told Lieutenant Fidelio that the Bonita's captain had left the vessel on the previous evening somewhere off the coast of North Carolina. He said the Bonita was bound for Canada, but Bodden was unable to name the port which was her destiny. Lieutenant Fidelio saw that the Bonita was low in the water, indicating a heavy cargo. He also saw that rubber tires had been strung along its sides, suggesting that another vessel had recently come alongside or was expected. When the Point Huron moved downwind from the Bonita, Coast Guardsmen detected a strong odor of marijuana.
 
 
 5
 Three Coast Guardsmen boarded the Bonita. Two of them testified that the odor of marijuana was "pervasive and obvious." In the pilothouse, Officer Jones found a nautical chart of the coast of the United States from Cape Hatteras, North Carolina to Cape May, New Jersey. A buoy off Cape Hatteras and another off Virginia's Eastern Shore had been marked, and there were penciled track lines running to each. After his examination of the chart and the vessel's registration papers, Officer Jones went to the forward cargo hatch. Finding the hatch unlocked, Jones opened it and saw in the hold hundreds of bales of marijuana. By looking through a porthole, it was observed that the aft cargo hold was also filled with bales of marijuana. In the two holds there were approximately 20,000 pounds of marijuana.
 
 
 6
 After the fact that the Bonita was carrying a cargo of marijuana had been confirmed, the Bonita was seized and transported to Norfolk. Each member of the seven man crew was arrested. Bodden was Honduran, while the other six members of the crew were from Colombia.
 
 
 7
 In a joint trial, the seven members of the Bonita's crew were found guilty of (1) possession of marijuana with the intent to distribute it, while on board a vessel subject to the jurisdiction of the United States on the high seas, in violation of 21 U.S.C. Sec. 955a(a) and 18 U.S.C. Sec. 2; (2) possession of marijuana knowing that it would be unlawfully imported into the United States, in violation of 21 U.S.C. Sec. 955a(d) and 18 U.S.C. Sec. 2; and (3) conspiracy to commit the two substantive offenses, in violation of 21 U.S.C. Sec. 955c.
 
 
 8
 After varying terms of imprisonment had been imposed upon them, five of the seven members of the Bonita's crew appealed their convictions.
 
 II.
 
 9
 At trial, Bodden and several other defendants claimed they had had no previous experience with the smuggling of drugs into the United States. In order to counter these claims, the prosecution sought to introduce testimony by Officer Jones of a conversation he had had with Bodden while the Bonita was being sailed from the high seas into Norfolk. Jones had reported that he had asked Bodden how Gonzales, the youngest member of the crew, had become involved in smuggling. Bodden's response was that Colombia was a very poor country and that drug smuggling provided a "fast way to make a quick dollar." Bodden talked generally about drug running vessels. He explained that they were navigated up Colombian rivers to marijuana plantations where they were loaded. They were then sailed back down the rivers to the sea, where their outbound crews came aboard.
 
 
 10
 The district judge ruled that Jones might testify about Bodden's description to him of the method of loading and manning vessels for their outbound drug voyages. However, he would not permit Jones to testify about Bodden's statement about the financial temptation of poor Colombians to engage in the smuggling business. He was concerned that admission of any such statement would violate the Sixth Amendment rights of Gonzales and the other five Colombian crewmen under the principle of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).[1]
 
 
 11
 On cross-examination of Jones, however, Bodden's attorney sought to question Jones about the excluded portion of Bodden's statement. He argued that admission of Bodden's description of the loading and preparation of vessels for a drug run would be taken as suggesting that Bodden had been previously involved in such ventures and that expansion of the testimony to show that he spoke in response to a question about Gonzales would indicate that he spoke in generalities.
 
 
 12
 Rights of confrontation and cross-examination are important components of a fair trial. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). However, the right is not so broad "as to deprive the district court of all discretion in limiting needless or confusing inquiry into collateral matters." United States v. Cole, 622 F.2d 98 (4th Cir.1980). In exercising that discretion, the trial judge may appropriately consider whether the proposed cross-examination would unfairly prejudice a co-defendant. United States v. Dansker, 537 F.2d 40 (3d Cir.1976).
 
 
 13
 Bodden had very little need for the testimony about why Colombians signed on marijuana boats. Jones had made it perfectly clear that the conversation was a general one about the loading and manning of marijuana vessels and not a statement about the loading of the Bonita for her last voyage. The statement about the temptation of Colombians to sign on such vessels would have been prejudicial to the Colombian defendants. It might also have been harmful to Bodden since the jury might well take it to indicate a closer association by Bodden with the Colombian defendants than Bodden admitted on the witness stand.
 
 
 14
 This limitation of the cross-examination of Bodden was well within the discretion of the district judge.
 
 III.
 
 15
 Bodden, Gonzales and Canizales contend that the evidence was insufficient to sustain their conviction.
 
 
 16
 The two substantive crimes of which they were convicted require proof of a knowledge element. See 21 U.S.C. Sec. 955a(a), (d). Proof of the conspiracy count, of course, requires proof of an agreement among the conspirators to commit the substantive offenses. United States v. Willis, 639 F.2d 1335 (5th Cir.1981).
 
 
 17
 In similar cases, the United States Court of Appeals for the Fifth Circuit has held that guilt beyond a reasonable doubt may reasonably be found by a jury from the combination of the probable length of the voyage, the large quantity of marijuana on board and the necessarily close relationship between the captain and his crew. United States v. DeWeese, 632 F.2d 1267 (5th Cir.1980), United States v. Alfrey, 620 F.2d 551 (5th Cir.1980).
 
 
 18
 Some of the judges of the Fifth Circuit have expressed the view that the three bare Alfrey factors, standing alone, are insufficient to sustain a conviction. See United States v. Freeman, 660 F.2d 1030, 1037 (5th Cir.1981) (Godbold, C.J., concurring); id. at 1042 (Tuttle, J., concurring). The testimony here, however, contains substantially more than proof of the three bare Alfrey factors.
 
 
 19
 When the Bonita was intercepted, she had already been at sea for twelve days. There were 20,000 pounds of marijuana on board and no other cargo. The voyage had originated in Colombia, a country widely known as a source of marijuana. Bales of marijuana could be seen through a porthole in the aft hold, and the odor of marijuana was "pervasive and obvious." Finally, a close relationship among the members of the crew is inferable from the length of the voyage and the small size of the vessel.
 
 
 20
 The only sleeping quarters aboard the Bonita were in a "berthing" area. For the seven members of the crew, there were six berths, three on either side stacked one above the other. The members of the crew necessarily worked, ate and slept together in very confined quarters. If one accepts as true the testimony of defendants that they were unacquainted with each other at the commencement of the voyage, it is clear that they had lived in a close and intimate relationship for twelve days as they worked together to bring the Bonita's cargo to its intended destination. From all of this, the jury could well infer a close relationship among the seven defendants.
 
 IV.
 
 21
 Appellate counsel filed an Anders brief on behalf of appellants Pena-Pena and Cordoba. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Pena-Pena's appeal is "wholly frivolous," so that his conviction will be affirmed.
 
 
 22
 The appeal of Cordoba is dismissed because there was no timely notice of appeal. F.R.A.P. 4(b).
 
 V.
 
 23
 Cordoba's appeal is dismissed as untimely; the conviction of each of the remaining four defendants is affirmed.
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 In this case, Bodden testified in his own defense. He denied making the extrajudicial statements about which Jones had testified, but the fact that he was on the witness stand and subject to cross-examination made Bruton's exclusionary rule inapplicable. Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). At the time of the court's ruling, however, the judge could not have been certain that Bodden would testify in his own defense. Moreover, even if Bruton did not require exclusion of the testimony about the profits to be made from participation in drug smuggling, the district judge had considerable discretion to exclude portions of statements in order to prevent unfair prejudice to the Colombian defendants