**UNITED STATES of America, Appellee,**

v.

**Henry A. CROCKETT, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Thressa CREWS, Appellant.**

**Nos. 85–5292, 85–5293.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 10, 1986.

Decided March 19, 1987.

Aaron Kadish, (Richard Winelander, Baltimore, Md., on brief), for appellants.

Elizabeth H. Trimble, Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., James B. Moorhead, Asst. U.S. Atty., Baltimore, Md., on brief), for appellee.

Before PHILLIPS, ERVIN, and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

Henry Alexander Crockett, his wife Regina Armstrong Crockett, and Thressa Crews were indicted in federal court for distributing the drug phencyclidine (PCP). Regina Crockett pled guilty. Mr. Crockett and Ms. Crews were tried and convicted. Mr. Crockett received a 30 year sentence; Ms. Crews received a six month sentence. Mr. Crockett and Ms. Crews now appeal their convictions on five grounds: first, that the trial court improperly limited cross-examination; second, that the evidence against Crews was not sufficient to support her conviction; third, that the jury should have received instructions about multiple conspiracies rather than a single conspiracy; fourth, that defense counsel should have been permitted to define reasonable doubt for the jury in closing argument; and finally, that the government violated the Speedy Trial Act. Finding no merit in these claims, we affirm both convictions.

I.

On May 15, 1981, employees of United Airlines at Los Angeles International Airport discovered a can of PCP in a shipment bound for Baltimore-Washington International Airport. A man and a woman had

brought it to the United counter. Later, one of the United employees was given photos of six men and asked whether he could identify the man who brought the can; the employee chose Henry Crockett's photo. At BWI airport, the package was picked up by Susan Clay, who had formerly lived with Crockett and who stated that Crockett had sent her two such packages in the past. She explained that Crockett had asked her to distribute the PCP and to send him a share of the profits.

On September 14, 1984, another package of PCP materialized at Los Angeles International, this time bound for Dulles International in Washington. At Dulles, the package was picked up by Janet Turner, who had also formerly lived with Crockett.

In the fall of 1984, working as an informant pursuant to a plea bargain, Ms. Clay twice bought some PCP from Crockett. In the spring of 1985, she introduced Crockett to Lance Williams, a government agent who was posing as a prospective buyer. Later, in April, Crockett sold a half gallon of PCP to Williams; Mrs. Crockett and her friend Ms. Crews were present at the transaction. Finally, in May, Crockett sold Williams a gallon of the drug; Mrs. Crockett and Ms. Crews were again present. At the close of the purchase, Williams signalled for an arrest. At trial, a government agent testified that one gallon of PCP has a street value of more than $1 million.

## II.

Appellants make three claims which raise questions as to the scope of cross-examination in a multiple defendant trial. First, both Crockett and Crews argue that the trial court improperly limited their cross-examination of two prosecution witnesses. Second, Crews argues that the trial court improperly prohibited her cross-examination of Crockett. Third, Crockett argues that the trial court improperly prohibited his cross-examination of Crews. We find that the trial court acted within its discretion in each instance.

Regarding the attempts of the defendants to cross-examine each other, we should note that the trial judge said that each defendant could call the other as part of their respective cases. The trial court ruled, however, that Crews could call Crockett only with his consent, and vice-versa. Both Crews and Crockett withheld their consent. Although both defendants had taken the stand in their own behalf, neither defendant challenged the other's assertion of a Fifth Amendment privilege. Hence the question of the compulsory process rights of one defendant against the Fifth Amendment rights of another who has previously testified is one defendants chose to waive for this appeal. Defendants have not, however, waived their Sixth Amendment rights to confrontation, and it is those contentions that we now address.

### A.

■ The trial court limited cross-examination by Crews of two government witnesses. First, counsel for Crews sought to ask Susan Clay about Crockett's earlier drug arrest in 1979. The trial court ruled that the proffered question was "too remote" from the conspiracy with which Crockett had been charged. That ruling was properly within the trial court's discretion; a court can place reasonable limits on cross-examination to reduce potential confusion of the jury and potential prejudice to a codefendant. *See United States v. Bodden*, 736 F.2d 142, 145 (4th Cir.1984).

■ Second, counsel for Crews sought to ask an undercover agent about a phone call he had made. Two agents called Crews' home to listen to her answering machine. In this way, they hoped to confirm that Crews used the nickname "Petey," which was also the name given by a woman who repeatedly called Janet Turner to leave messages for Crockett. One agent called during the investigation and one called after the trial started. Counsel for Crews sought to ask about the second call. The court stated that testimony about events occurring after the trial began was not admissible. (The trial court had previously ruled that the government could not introduce testimony based on the recordings.)

Such a limitation is within the court's discretion. *Bodden, supra.*

## B.

Crews sought to cross-examine Crockett. The trial judge refused her request, noting that Crockett's testimony did not incriminate her; Crockett did not indicate that Crews was at all involved in the conspiracy. Accordingly, the trial judge applied our decision in *United States v. Mercks,* 304 F.2d 771 (4th Cir.1962), where we explained the scope of the right to cross-examine a codefendant under the Confrontation Clause of the Sixth Amendment. We held squarely that a defendant has a right to cross-examine a codefendant only if the codefendant's testimony was incriminatory. *Id.* at 772.

We do not think that the trial judge erred in characterizing Crockett's testimony as non-incriminatory. The judge was present throughout the trial, and his sense of the import of Crockett's testimony merits substantial deference.* Not only did Crockett fail to testify that Crews participated in the distribution of PCP, he denied having much contact with her at all. In connection with Crockett's testimony that "someone else" obtained the PCP and that he gave the money from the drug sale to "someone else," Crews argues that the jury might have inferred that Crockett was referring to her. The trial court found, and we agree, that Crockett was clearly referring to his wife Regina, who had pled guilty.

Crockett consistently attempted in his testimony to pin responsibility on Regina and on Susan Clay, but not on Crews. He testified that Susan kept barrels of Piperidine (a chemical used in the production of PCP) in her garage; that Susan was a drug dealer; and that Susan and Regina had become "very good friends." In contrast, Crockett's testimony discloses no reason at all to believe he was incriminating Crews. In fact, the trial judge found that the testimony of Crockett and Crews about each other would, if believed, be *exculpatory.*

Under *Mercks,* therefore, Crews was not entitled to cross-examine Crockett. Our holding in *Mercks* is consistent with the purpose of the Confrontation Clause. The Confrontation Clause provides the defendant with a right "to be confronted with the witnesses *against him.*" The right of confrontation does not give defendants a plenary right to elicit friendly testimony. That is the purpose of the Sixth Amendment right of a defendant "to have compulsory process for obtaining witnesses in his favor."

Neither does the right to confrontation arise merely from the status of the witness as a codefendant. Granting a defendant an unrestricted right to cross-examine a non-hostile codefendant could have adverse effects. First, counsel would possess an unrestricted right to ask leading questions. *See* Fed.R.Evid. 611(c). Second, favorable testimony from a cooperative codefendant may possess false credibility in the eyes of the jury if obtained on cross-examination. A witness called by defendant is understood to be the defendant's own; cross-examination, on the other hand, might, as the district court noted, enable counsel to smuggle "self-serving state-

---

* The dissenting opinion is simply unfair to the trial judge when it implies that he failed to weigh the incriminatory impact of the testimony. In reviewing the defendants' requests to cross-examine one another, he carefully explained his view of their testimony:

In looking at the evidence here, if you take Defendant Crew's testimony, it did not incriminate Defendant Crockett. Indeed, Defendant Crews testified that she did not participate in a conspiracy, that she did not aid and abet in the distribution of PCP or the possession of PCP, and that she didn't place any narcotics in the hands of the co-defendant. So, the evidence was not incriminatory and, therefore, there was no right to cross-examine.

And the same is true when you look at the testimony of Defendant Crockett. It did not incriminate Ms. Crews. I think both defendants testified that they really didn't know each other at all, and there was nothing that Defendant Crockett testified to that said that Ms. Crews was aiding and abetting him in the distribution of PCP. Of course, he wouldn't be testifying to that.

So, I think if you took the testimony of each of them, they, in effect, would exonerate the other if they were believed.

We accept these comments as a straightforward explanation of why the trial judge ruled as he did—not, in the words of the dissent, as a "post hoc rationalization."

ments" into trial under the cloak of hostility.

The cases of this circuit and of the Supreme Court have thus understandably justified the right of confrontation on the basis of defendant's right to impeach and otherwise challenge adverse testimony. Trial courts need not assess the adverse nature of testimony according to formalistic categories—by whether a co-conspirator was called by the government, or is testifying on his own behalf or on behalf of a codefendant. The critical matter is not the formal status of a witness but the actual content of his testimony. *See* Fed.R.Evid. 607. Nonetheless, the right to confrontation is most often a right to confront opposing witnesses:

> The constitutional right of confrontation guaranteed to a state criminal defendant by the fourteenth amendment has as one of its most important aspects the right to cross-examine a hostile witness in order to undermine the credibility of the witness by highlighting the possible influence of bias on the testimony of the witness.

*Hoover v. State of Maryland,* 714 F.2d 301, 305 (4th Cir.1983); *see also Chavis v. State of North Carolina,* 637 F.2d 213, 225 (4th Cir.1980). Given the text of the Sixth Amendment and its animating purposes, it is not surprising that the Eleventh Circuit has recently adopted a rule similar to that of *Mercks,* and held that "the Sixth Amendment guarantees only the opportunity to confront *adverse* witnesses." *United States v. Andrews,* 765 F.2d 1491, 1501 (11th Cir.1985) (emphasis in original).

In one of the seminal co-conspirator cross-examination cases, *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), the Supreme Court underscored the confrontational essence of the Confrontation Clause. There, in a joint trial, the government had introduced the earlier confession of one defendant as evidence against his codefendant, Bruton. Because the confessing defendant did not take the stand, Bruton had no opportunity to cross-examine him. The Court ruled that admission of the confession violated petitioner's right to confrontation. Underlying the Court's decision was a view that the petitioner had a right to test and impeach prejudicial evidence—to put the government to its proof. It was the inability to probe "incriminating extrajudicial statements" that implicated Bruton's confrontational rights. 391 U.S. at 126, 88 S.Ct. at 1622. These values simply do not arise in the claim of Ms. Crews, as Crockett's testimony was not incriminatory, not prejudicial, and not a part of the government's proof. *See also Lee v. Illinois,* —— U.S. ——, 106 S.Ct. 2056, 2062, 90 L.Ed.2d 514 (1986).

The dissent lists a number of cases in which the Supreme Court has indicated the importance of the right to cross examination—a proposition with which we readily agree—and then concludes that the right attaches "if there is *any question* whether a codefendant's testimony tends to incriminate an accused." (emphasis added). That view has not been accepted by this circuit or any other circuit in the aftermath of *Bruton.* On the contrary, a number of circuits have held that no violation of the confrontation clause occurs where a codefendant's statement could fairly be understood not to incriminate the accused. *See United States v. Porter,* 764 F.2d 1, 16 (1st Cir.1985) (statement "made no mention of" accused); *United States v. Webster,* 734 F.2d 1048, 1054 n. 6 (5th Cir.1984) (no Confrontation Clause right "unless a codefendant's statement directly alludes to the complaining defendant"); *United States v. Lane,* 752 F.2d 1210, 1216 (7th Cir.1985) (statement "did not *necessarily* implicate" accused); *United States v. Jenkins,* 785 F.2d 1387, 1393 (9th Cir.1986) (statement did not "directly implicate" accused).

The rule suggested by the dissent would undercut the use of redacted statements in multiple-defendant trials. The use of such statements has proven vital to such trials in the wake of *Bruton.* When an out-of-court statement of a nontestifying codefendant is introduced, the written record of the statement is typically edited to remove incriminatory references pertaining to other defendants. This practice permits the

out-of-court statement to be introduced without creating a *Bruton* violation. If a violation of the right of confrontation could be asserted on the slightest ambiguity in the statement, defendants would virtually always be able to keep the statements out. *See United States v. Wilkinson*, 754 F.2d 1427, 1435 (2d Cir.1985); *United States v. Burke*, 700 F.2d 70, 85 (2d Cir.1983); *United States v. Wright*, 742 F.2d 1215, 1223 (9th Cir.1984); *United States v. Taylor*, 792 F.2d 1019, 1023 (11th Cir.1986).

■ These post-*Bruton* cases all pertain to the statements of a nontestifying codefendant, as did *Bruton* itself. The fact that Crockett was a testifying codefendant does not render these principles inapplicable to the present case, however. In both situations, the accused has asserted his Sixth Amendment right to confront the codefendant in order to challenge an incriminatory statement. In both situations, the trial court must determine whether such a right is present, and hence must determine whether the statement is in fact incriminatory. The only difference between the two situations is the course that must be taken once the statement has been found to incriminate the accused. Where the codefendant is testifying, the proper course is to allow cross-examination; where the codefendant is not testifying, the proper course is to exclude the statement or to insist upon an appropriate redaction. All the cases make clear that the trigger for the right of confrontation is an incriminatory statement.

### C.

A second question arose under *Mercks* when Crockett sought to cross-examine Crews. During direct examination, Crews testified that Crockett had been spending money freely. Crockett sought to cross-examine her on this point, hoping to dispel the inference that he was spending drug money. The court held that he could not cross-examine her, but that he could bring her on for direct examination if she consented. Invoking her Fifth Amendment privilege, Crews stated that she would not consent to testify. Crockett does not challenge her refusal to testify on direct; he does, however, challenge the denial of cross-examination.

■ We agree with the trial court that Crews' testimony fails to incriminate Crockett. When asked on direct if she had "any idea" that Mr. and Mrs. Crockett "were or may have been involved in distribution of PCP," Crews responded "No." The government's cross-examination of Crews elicited further affirmations of her ignorance of any unlawful activity. Any intimation to the contrary would have undermined her entire defense: that she neither knew nor had reason to suspect Crockett's drug involvement. The court's decision to deny Crockett the opportunity to cross-examine Crews was thus permissible under *Mercks, supra,* for Crews' testimony failed to give rise to any incriminatory inference which Crockett had a right to challenge.

Moreover, restriction of cross-examination is subject to the "harmless error" analysis set forth by the Supreme Court in *Delaware v. Van Arsdall*, — U.S. —, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986):

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

■ Here Crews' testimony about Crockett's spending habits was unimportant to the prosecution's case. Crockett's conviction was supported by a wealth of condemnatory evidence; he was identified in drug involvement by an airline employee, three of his co-conspirators, and two undercover

detectives. Two of the three co-conspirators, former girlfriends of Crockett's, testified that he required them to sell PCP for him or go without child support for the children he had fathered. Assuming solely for purposes of argument that error was committed here, the denial of Crockett's opportunity to cross-examine Crews was clearly harmless.

## III.

Crews argues that the evidence was not sufficient to support her conviction. In reviewing a conviction on appeal, we must take the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Snowden,* 770 F.2d 393, 397 (4th Cir.1985). The evidence against Crews, although circumstantial and not as overwhelming as the evidence against Crockett, was clearly sufficient to support the jury's verdict.

Crews was found guilty of distribution of PCP and possession with intent to distribute, 21 U.S.C. § 841(a)(1). She was also found guilty of conspiracy to distribute, 21 U.S.C. § 846. The first offense, distribution, requires either physical transfer of the drug or other acts in furtherance of the transfer. *United States v. Brunty,* 701 F.2d 1375, 1381 (11th Cir.1983). The second offense, possession with intent to distribute, requires the government to prove knowing possession of the drug with intent to distribute it. *United States v. King,* 768 F.2d 586, 588 (4th Cir.1985); *United States v. Samad,* 754 F.2d 1091, 1096 (4th Cir.1984). The third offense, conspiracy to distribute, requires merely that Crews knew the conspiracy's purpose and took some action indicating her participation. *United States v. Collazo,* 732 F.2d 1200, 1205 (4th Cir.1984). Both the substantive and conspiracy offenses were supported by the evidence.

Crews was present at the two drug transactions of April 19 and May 30 between Mr. Crockett and the government agent, Lance Williams. She drove the car; "one who owns or exercises dominion or control over a motor vehicle in which a contraband substance is concealed may be deemed to possess the contraband." *United States v. Vergara,* 687 F.2d 57, 62 (5th Cir.1982). Mrs. Crockett, sitting beside her, had the PCP in a gym bag and had the pungent odor of PCP on her clothing. Crews left numerous phone messages with Janet Turner on behalf of Mr. Crockett and frequently left her own phone number on Mr. Crockett's beeper. Crews rented six cars for the Crocketts in a two month period. She received gifts of clothes and meals from the Crocketts. At the May 30 transaction, Mr. Crockett leaned into the driver's window of the car while Crews was in the driver's seat and spoke across to Mrs. Crockett, on the passenger's side, about how the deal would take place.

The fact that the evidence is circumstantial does not, of course, make it insufficient. "While each piece of evidence, standing alone, may have been susceptible of innocent interpretation, we are convinced that the jury reasonably could have concluded that the evidence, when examined in the aggregate, sufficed to establish that [defendant] was a culpable member of the conspiracy...." *United States v. Vergara,* 687 F.2d at 61. Here there was substantial evidence to support the jury's verdict that Crews was anything but an innocent dupe in the proceedings, that Crews possessed and intended to distribute the illicit contents of the automobile, and that Crews knowingly participated in Crockett's PCP enterprise.

## IV.

Defendants argue that the trial court should have instructed the jury that it could find the existence of either a single conspiracy or multiple conspiracies. The trial court refused to issue such an instruction; instead, the court instructed the jury only about a single conspiracy. We find no error.

If the facts support only a single conspiracy, the jury need not be instructed about multiple conspiracies. *United States v. Richards,* 737 F.2d 1307 (4th Cir.1984); *United States v. Burman,* 584 F.2d 1354

(4th Cir.1978). The trial court explained why only a single conspiracy existed:

There is certainly a distinction between a single conspiracy with different parties joining and leaving at different times and several separate conspiracies. Here, I am satisfied there was one. The conspiracy had the same objective, it had the same goal, the same nature, the same geographic spread, the same results, and the same product. We had the key man being Crockett and the principle actors Armstrong and Clay being the same.

## V.

■ Appellants argue that the trial judge improperly prevented them from presenting a definition of "reasonable doubt" to the jury in closing argument. The trial court refused to define "reasonable doubt" for the jury, following *United States v. Moss*, 756 F.2d 329, 333 (4th Cir. 1985) and *Smith v. Bordenkircher*, 718 F.2d 1273, 1276 (4th Cir.1983), where we noted that such definitions are usually more confusing than helpful. The trial court's refusal to permit elaboration of the standard in closing argument was consistent with the *Moss* decision. Although a trial court cannot, of course, prohibit closing argument entirely, it can limit closing argument to "ensure that argument does not ... impede the fair and orderly conduct of the trial." *Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975). There was no abuse of discretion in the limitation in this case.

## VI.

Finally, defendants allege a violation of the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, arguing that they were detained beyond the 70–day limit imposed by the statute. Defendants argue that the 70–day limit began to run on May 31, 1985, the date of their first appearance before a judicial officer. Under 18 U.S.C. § 3161(c)(1), however, the period begins with the first appearance before a judicial officer or with the filing of the indictment, whichever comes later. Under 18 U.S.C. § 3161(h)(7), a reasonable period of delay is allowed for Crockett's trial because he was joined with codefendant Crews. *United States v. Carey*, 746 F.2d 228 (4th Cir.1984); *United States v. Piteo*, 726 F.2d 50 (2d Cir.1983). The interval between June 11, when Crockett was indicted, and June 20, when Crews was indicted, is a reasonable delay. Thus, the appropriate starting date is June 20, the date of Crews' indictment.

■ Between June 20 and September 30, the beginning of the trial, an interval of 101 days elapsed. As directed by 18 U.S.C. § 3161(h)(1), we exclude delays resulting from motions and proceedings, in this case 30 days for motions and one for the arraignment. The trial began on the seventieth day of speedy trial time, and the district court properly refused to dismiss the case.

## VII.

After reviewing the claims of the defendants, we conclude that their convictions should be upheld. Accordingly, the judgment of the district court is

AFFIRMED.

ERVIN, Circuit Judge, dissenting:

While I agree with the majority that Henry Crockett's conviction should be affirmed, I dissent from the view, expressed in part II.B of the opinion, that Thressa Crews was properly prohibited from cross-examining Crockett, her co-defendant. Henry Crockett repeatedly testified that some unnamed woman procured drugs for and received money from his illicit transactions. This woman was identified only as "someone else." Crews was closely linked to these transactions in the government's cross-examination of Crockett. The trial judge did *not* engage in any weighing of incriminatory impact before denying cross-examination, as the majority implies. His stated rationale for denying Crockett's cross-examination of Crews was "you can't cross her because she was called as a defendant. You are not entitled to cross-examine another defendant and get in self-serving statements." When Crews sought to cross-examine Crockett the judge simply

said: "Well, its the same problem." The characterization of Crockett's testimony as "non-incriminatory" was post hoc rationalization. It is entirely possible that the jury equated Crews with the unnamed woman onto whom Crockett attempted to shift much of the blame for his wrongdoing. Crews should therefore have been allowed to cross-examine Crockett; she is accorded that right under the confrontation clause of the sixth amendment, as interpreted in numerous Supreme Court cases and in *United States v. Mercks*, 304 F.2d 771 (4th Cir. 1962).

The importance of that right is beyond cavil. "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

*Mercks*, which predated much of the important discussion of the confrontation clause by the Supreme Court, noted that "undoubtedly" a defendant must be allowed to cross-examine a co-defendant whose testimony tends to incriminate the defendant. 304 F.2d at 772. The question, rephrased in its constitutional language, is: when does a witness count as a witness "against" an accused? In *Mercks* there was no doubt that the original testimony was not "against" the accused, for two reasons: the testimony actually tended to exonerate the accused and the accused was later allowed to clear up any ambiguity by questioning the co-defendant on direct examination. The *Mercks* court made it clear that these conditions limited its holding:

"Under *these circumstances* we perceive no prejudice to appellant." *Id.* (emphasis added).

The trial judge and the majority on this panel relied on *Mercks*, but erroneously. First, the judge's "finding" that Crockett's highly ambiguous testimony did not incriminate Crews is an unsupportable foray into the province of the jury. No one can say with assurance whether that testimony cast doubt on Crews' case. That inherent uncertainty is the reason why Crews should have been allowed some examination of Crockett. The trial judge should rely on the truthfinding function of cross-examination rather than the judge's own perception of incriminatory impact, in close cases. Because the statements made by Crockett were not clearly exculpatory, *Mercks* is not controlling, and this case represents a nibbling away at the constitutional concept of a witness "against" a defendant.

Second, the co-defendants in this case refused to be called directly by each other. This further distinguishes the case from *Mercks*. Both the trial judge and the majority have completely ignored this second condition under which the *Mercks* court upheld the denial of cross-examination: the testifying co-defendant in that case was later questioned on direct examination by the accused.

Finally, *Mercks* is far from the last word on the scope of the confrontation clause. The majority acknowledges this in its general discussion of the reasons behind the clause. But *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), interpreted by the majority, is also not the final word.[1] Two cases from the

---

1. *Bruton* established the rule that limiting instructions to the jury are an insufficient substitute for the right of confrontation when the evidence introduced against one is "devastating," 391 U.S. at 136, 88 S.Ct. at 1628, and the credibility of the direct testimony is suspect given the "recognized motivation to shift blame onto others." *Id.* The *Bruton* rule was expanded in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis*, defense counsel was not allowed to cross-examine a

prosecution witness to explore bias. The conviction was reversed.

Two other cases suffice to set the stage for the Court's current approach to confrontation clause problems. In both, convictions were allowed to stand despite one defendant's inability to cross-examine a nontestifying co-defendant whose confession was introduced. Both decisions rested this result, however, on the strength of the case against the defendant absent the co-defendant's confession. *See Schneble v. Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340

last term of the Supreme Court illustrate the proper context and process for analyzing confrontation clause cases. In *Lee v. Illinois*, — U.S. —, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the Court made clear the continuing importance it attaches to confrontation clause issues. *See id.*, at —, 106 S.Ct. at 2061. The truthfinding function said in *Lee* to be served by the right of cross-examination was severely diluted in this case, by denying Crews the chance to cross-examine Crockett.

In *Delaware v. Van Arsdall*, — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the court readily found a violation of the constitutional right of confrontation when defense counsel was not allowed to explore the possible bias of a prosecution witness. *Id.*, at —, 106 S.Ct. at 1435. The case turned on the *harmfulness*, not the existence of the error. The majority acknowledges the analytic framework of *Van Arsdall* by applying harmless error analysis, in part II.C. of the opinion, to Crockett's inability to cross-examine Crews.[2]

That route was avoided by the majority in part II.B. of its opinion, perhaps because it is not easily said that the error was harmless. The case against Crews was not strong; it was completely circumstantial. The issue was not whether certain areas could be explored on cross-examination; in this case, as in *Van Arsdall*, "the trial court prohibited *all* inquiry." *Id.* There was apparently no other evidence to corroborate or to contradict Crockett's testimony about making arrangements with and giving money to the anonymous female "someone else." This testimony was not central to the case against Crews, but it certainly may have raised suspicions about her.

The discretion accorded to the trial judge by the majority exceeds that granted in *Mercks* and that tolerable under the sixth amendment. It is necessary and proper for a trial judge to have discretion over the *scope* of cross-examination. But discretion over the *right* to cross-examination is another matter. At the very least, such discretion must be exercised in a principled way. The majority here leaves trial judges without guidance in cases in which a co-defendant's testimony is neither clearly exculpatory nor clearly incriminatory.

The principle should be: if there is any question whether a co-defendant's testimony tends to incriminate an accused, the accused should be allowed to explore the facts underlying that testimony either in cross-examination or on direct. If, as in this case, the co-defendant invokes the fifth amendment or is otherwise incapable of being directly examined, then cross-examination must be allowed. Failure to allow any cross-examination in such a case is error, subject to the harmless error rule announced in *Van Arsdall.*

The error in Thressa Crews' case cannot be said to be harmless. The exigencies of criminal prosecution, noted by the majority, ought not determine the provision of constitutional rights. Accordingly, I would reverse her conviction.

---

(1972); *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). In this respect they anticipated the application of harmless error analysis to confrontation clause violations, announced in *Delaware v. Van Arsdall*, — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

**2.** The majority's recitation of other Fourth Circuit cases to support its decision herein merely reinforces the view that Crews should have been given the chance to cross-examine Crockett. In *Chavis v. State of North Carolina*, 637 F.2d 213 (4th Cir.1980), we reversed the convictions of defendants who were not allowed to explore the bias of a prosecution witness in cross-examina-

tion. 637 F.2d at 226. We noted that judicial limits on cross-examination were confined to instances of harassment, violation of the witness's fifth amendment rights, or danger to the witnesses. *Id.* In *Hoover v. State of Maryland*, 714 F.2d 301 (4th Cir.1983), we affirmed the issuance of a writ of habeas corpus for a prisoner who was not allowed to cross-examine a "hostile" witness. *Id.* at 305. The question in the instant case is whether a trial judge may properly conclude that a witness is not "hostile" merely because he is also on trial. Neither case addressed that issue, but both reinforced the importance of sixth amendment rights, citing *Davis v. Alaska.*