822 F.2d 56
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marion William CHILDERS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Richard CARLUCCI, Jr., Defendant-Appellant.
 Nos. 86-5168(L), 86-5169.
 United States Court of Appeals, Fourth Circuit.
 Argued April 10, 1987.
Decided June 18, 1987.
 
 Before PHILLIPS and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 William Edward Rebrook, III; Ross Maruka, for appellants.
 David Earl Godwin, Assistant U.S. Attorney (William A. Kolibash, United States Attorney, on brief), for appellee.
 PER CURIAM:
 
 
 1
 John Richard Carlucci, Jr., and Marion William Childers were convicted of a variety of federal crimes related to drug distribution. Carlucci was also convicted of engaging in a continuing criminal enterprise (21 U.S.C. Sec. 848), racketeering (18 U.S.C. Sec. 1962), and defrauding the federal government by evading income taxes (18 U.S.C. Sec. 371). Carlucci and Childers appeal their convictions on a variety of grounds. Finding no error, we affirm.
 
 I.
 
 2
 Carlucci operated a ring to distribute methamphetamine from late 1979 until late 1984. Carlucci purchased the drug from Joseph McDermott and then sold it to a number of individuals, including Childers. Carlucci was then living in West Virginia with a woman named Sandra Fominko and her children.
 
 
 3
 The ring ended when McDermott was arrested. After McDermott's arrest, Carlucci attempted to help him escape. The escape attempt failed. Carlucci, Fominko, and the children moved to Ohio. Carlucci assumed the alias of Kenneth Lantz.
 
 
 4
 Fominko and the children later returned to West Virginia, where Fominko agreed to testify against Carlucci. In addition to testifying about Carlucci's drug activities, she also testified that he had threatened her to discourage her from cooperating with the government. Fominko and another witness also testified that Carlucci killed Gary Frederick Schaefer and Marian Schaefer to prevent them from disclosing his drug ring to the police.
 
 II.
 
 5
 Carlucci and Childers argue that the district court erred by permitting the jury to consider evidence of Carlucci's move from West Virginia to Ohio, of Carlucci's involvement in McDermott's escape attempt, of Carlucci's concern that McDermott would cooperate with the government, of Carlucci's assuming an alias, and of Carlucci's possession of a .38 caliber handgun. Appellants also argue that the court erred in admitting some methamphetamine allegedly purchased from Carlucci. Appellants argue that all this evidence was irrelevant and, if relevant, was unfairly prejudicial. We disagree.
 
 
 6
 The evidence was clearly relevant to Carlucci's involvement in the drug ring. United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.1987); United States v. Collazo, 732 F.2d 1200 (4th Cir.1984); United States v. Laughman, 618 F.2d 1067 (4th Cir.1980). Carlucci's move, his involvement in the escape attempt, and his alias supported the theory that he was trying to conceal his guilt. It is particularly relevant because Fominko was able to testify as to Carlucci's motives for the acts. She stated that they left West Virginia because "Joe [McDermott] had been arrested" and "John felt that ... Joe may go ahead and agree to cooperate." She stated that he adopted an alias "so that the police wouldn't know where he was at or couldn't trace him by name."
 
 
 7
 Carlucci's possession of a handgun supported the theory that Carlucci was trying to intimidate potential informants and that he planned to carry out his threats if necessary. Although Carlucci was ultimately acquitted of obstruction of justice, his handgun was relevant to this charge.
 
 
 8
 The methaphetamine introduced at trial had been tied to Carlucci by a witness. It was relevant as to Carlucci's involvement in drug distribution and as to the identity of the drug.
 
 III.
 
 9
 Carlucci and Childers contend that the evidence at trial was insufficient to show that they were involved in an "enterprise" as required for their racketeering (RICO) convictions. 18 U.S.C. Sec. 1962(c)-(d). Carlucci further contends that the evidence was insufficient to show that he held a "position of organizer, a supervisory position, or any other position of management" in a "continuing criminal enterprise." 21 U.S.C. Sec. 848(d). We disagree.
 
 
 10
 Both of these contentions rely on a characterization of the drug ring as a loose business relationship between Carlucci and the dealers who sold his drugs. In this view, the dealers who bought from Carlucci were independent operators. Their relationship is said to be akin to that between a wholesaling firm and the independent retailers who buy from it. Appellants argue that Carlucci exercised no managerial control over the dealers and that the ring did not function as a single enterprise. To support his view, appellants state that some of the dealers testified to buying methamphetamine not just from Carlucci but from wherever they could get it.
 
 
 11
 We must evaluate the evidence supporting the convictions in the light most favorable to the government. Glasser v. United States, 315 U.S. 60 (1942); Crockett, 813 F.2d at 1316. The evidence presented to the jury in this case was sufficient to support convictions both for racketeering and for engaging in a continuing criminal enterprise. Numerous pieces of evidence indicate that, contrary to the appellants' view of the facts, Carlucci did exercise control over the dealers in the drug ring. Albert Pritt, one of Carlucci's dealers, testified that Carlucci had instructed him not to go to certain places and not to see certain people. Other witnesses testified that Carlucci had threatened and later killed one of his dealers, Gary Schaeffer, along with his wife Marian, because Schaeffer appeared likely to cooperate with the government. This too was an exertion of control--a rather extreme exertion of control--over a dealer.
 
 IV.
 
 12
 Carlucci argues that the jury instructions should have included a definition of the managerial element of the continuing criminal enterprise charge. The district court committed no error, however. The concepts of organizing, supervising, and managing in Sec. 848(d) are to be construed according to their ordinary meanings. United States v. Ray, 731 F.2d 1361, 1367 (9th Cir.1984).
 
 V.
 
 13
 Finally, appellants argue that the evidence was not sufficient to establish that the substance they possessed and distributed was methamphetamine. On the contrary, numerous witnesses--including some dealers and users of methamphetamine--testified that appellants were distributing it. The actual methamphetamine produced at trial also supports this conclusion.
 
 The judgment of the district court is
 
 14
 AFFIRMED.