841 F.2d 1123
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan M. CABRERA, Defendant-Appellant.
 No. 87-5131.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Jan. 29, 1988.
Decided: Feb. 22, 1988.
 
 Neil W. Steinhorn, on brief, for appellant.
 Breckinridge L. Willcox, United States Attorney; Joyce K. McKee, Assistant United States Attorney, on brief, for appellee.
 Before HARRISON L. WINTER, Chief Judge, and SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Juan M. Cabrera appeals his convictions for conspiracy to distribute cocaine, 21 U.S.C.A. Sec. 846 (West 1981), and possession of cocaine with intent to distribute, 21 U.S.C.A. Sec. 841(a)(1) (West 1981). We affirm.
 
 I.
 
 2
 The key witness for the government was Pablo Eloy Garcia, a convicted cocaine dealer who testified regarding his cocaine transaction in the Baltimore, Maryland area. While facts were in dispute and testimony in conflict, we are required to view the evidence adduced at trial in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80 (1942). Adhering to this principle, Garcia's testimony shows that in the fall of 1985, he met Cabrera who recruited him to distribute cocaine supplied by Angel Guada of Miami, Florida. Garcia received the first kilogram of cocaine in October or November of 1985, and a second kilogram in January 1986. He also obtained 20 ounces in April 1986. Each delivery was made by Cabrera who transported the cocaine from Miami to Baltimore.
 
 
 3
 During the spring of 1986 Garcia was approached by another dealer, Herbert Carter, who represented an Alaskan businessman interested in purchasing two kilograms of cocaine. In fact, the Alaskan businessman was an undercover agent of the Drug Enforcement Administration.
 
 
 4
 Several days prior to the scheduled May 20, 1986 delivery date, Garcia drove Cabrera to an airport to board a flight to Miami to obtain the two kilograms of cocaine from Guada. Cabrera returned to Baltimore in a truck with the cocaine hidden in the door of the vehicle. On arrival in Baltimore, Cabrera met Garcia and drove him to the home of Carter's associates, Eddie and Debbie Hernandez. There Garcia observed Mr. and Mrs. Hernandez and Cabrera remove the cocaine from the door. At that point, Debbie Hernandez left to deliver the cocaine to Carter.
 
 
 5
 Carter was arrested during the afternoon of May 20, 1986 when he attempted to deliver the cocaine to the undercover agent. With the cooperation of Carter, Debbie Hernandez and Garcia were arrested, and Eddie Hernandez surrendered to authorities. Cabrera eluded arrest until after he was indicted in February 1987 for conspiracy and possession with intent to distribute in connection with the May 1986 transaction. At trial he was convicted on both counts and sentenced to 15 years imprisonment.
 
 II.
 
 6
 "The essence of the crime of conspiracy is an agreement to engage in a criminal act." United States v. Manbeck, 744 F.2d 360, 386 (4th Cir.1984), cert. denied, 469 U.S. 1217 (1985). To obtain a conviction for conspiracy the government was required to prove that Cabrera was a knowing and willing participant in the conspiracy. Id.; United States v. Norris, 749 F.2d 1116, 1121 (4th Cir.1984), cert. denied, 471 U.S. 1065 (1985). The conviction under the substantive provision of section 841(a)(1) required proof that Cabrera knowingly possessed cocaine with the intent to distribute it. United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.), cert. denied, 98 L.Ed.2d 71 (1987). Cabrera contends that there was insufficient evidence to support his convictions because the government did not offer testimony from Debbie Hernandez that he supplied the cocaine to her or to Herbert Carter. But, the convictions were amply supported by the testimony of Garcia regarding Cabrera's trip to Miami and return with the cocaine, and the subsequent delivery to the Hernandez home. The testimony of Debbie Hernandez would have been merely cumulative.
 
 III.
 
 7
 Cabrera also asserts that the trial court erred in preventing defense counsel from defining reasonable doubt in his closing argument. Heeding the admonition of this court in United States v. Moss, 756 F.2d 329, 333 (4th Cir.1985), the trial court correctly refused to instruct the jury on the definition of reasonable doubt. The court also properly refused to permit elaboration of the reasonable doubt standard in closing argument. Crockett, 813 F.2d at 1317.
 
 
 8
 AFFIRMED.