879 F.2d 863
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Luis ESCOBAR, Defendant-Appellant.
 No. 89-5039.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 9, 1989.
Decided: July 12, 1989.
 
 George Vernon Laughrun, II, for appellant.
 Andrew Levchuk (Thomas J. Ashcraft, United States Attorney, and Robert J. Erickson, Attorney, Department of Justice, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS and WILKINS, Circuit Judges, and RICHARD L. WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant in this case challenges his conviction for conspiracy to possess and distribute cocaine, possession of two kilograms of cocaine with intent to distribute, and distribution of two kilograms of cocaine. He also appeals the trial court's decision not to grant him a reduction in his guideline sentence for being a "minimal" participant. Finding the appellant's arguments unpersuasive, we affirm.
 
 
 2
 * After Jorge Valdez was arrested in Charlotte, North Carolina, on drug charges, he agreed to cooperate with the police. He named as his source Juan Escobar, the appellant's father-in-law, and arranged for Juan to bring two kilograms of cocaine from Miami to Charlotte. When Juan arrived in Charlotte, he was accompanied by the appellant, Luis Escobar. They met Valdez and two undercover police officers at Valdez's auto repair shop. Juan got out of the car, spoke with Valdez and the officers, and then instructed the appellant to drive around to the back of the shop. Once in back, Juan spoke briefly with the appellant in Spanish, following which, the appellant took a screwdriver, removed a panel from inside the tailgate of the car, and pulled out two grease-covered manila envelopes. He gave one envelope to Juan and kept the other, and they both returned to the shop. The appellant handed his envelope to one of the officers. When the officer asked to see what was in the envelope, the appellant wiped it off, opened it and handed it back to the officer. Once the officer had determined that the envelope contained cocaine, the appellant and Juan were both arrested.
 
 
 3
 In a statement given after waiving his Miranda rights, the appellant stated that this was his first such trip to North Carolina, that Juan had told him en route that he had a "drop off to make" and that the appellant could make "$600 to $800 per package" if he would help. When the appellant asked how many there were, Juan replied "only two kilos." App. at 98. Juan testified that the appellant did not know anything about their mission, and did not know there was cocaine concealed in the car. App. at 122-23. Valdez testified that he had never dealt with the appellant before, and that he had no idea that the appellant would be along in the car. App. at 194. The police officers involved also testified that they had no prior knowledge of or contact with the appellant. App. at 46, 73.
 
 
 4
 The appellant was charged with conspiracy to possess and distribute cocaine, in violation of 21 U.S.C. Sec. 846, possession of cocaine with intent to distribute, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2, and distribution of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. He was convicted by a jury on all three counts. Because the crimes took place after November 1, 1987, his sentence was imposed pursuant to the Sentencing Reform Act of 1984, 18 U.S.C. Sec. 3551, et seq., and the Sentencing Guidelines promulgated thereunder. The Guidelines originally called for a sentence of 87 to 108 months. The District Court reduced the total offence level by two points based on its finding that the appellant was a "minor" participant in the conspiracy. Guidelines, Sec. 3B1.2(b). This yielded a range of 70 to 87 months. The District Court sentenced the appellant to 70 months' imprisonment.
 
 
 5
 The appellant now challenges the sufficiency of the evidence supporting his conviction, and the district court's refusal to find that he was a "minimal" participant, thereby entitling him to a further two point reduction in his total offence level.
 
 II
 
 6
 When the verdict in a criminal case is challenged on appeal, it "must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942); Hamling v. United States, 418 U.S. 87, 124 (1974).
 
 
 7
 In order to sustain a conspiracy conviction it is only necessary to show that the defendant "knew the conspiracy's purpose and took some action indicating [his] participation." United States v. Crockett, 813 F.2d 1310, 1316 (4th Cir.), cert. denied, 109 S.Ct. 112 (1987). The appellant's own confession that he and Juan discussed "deliveries" that would be measured in kilograms and compensated lavishly is substantial evidence that he knew of the conspiracy's purpose. "Knowledge and participation in the conspiracy may be proved by circumstantial evidence." United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir.), cert. denied, 108 S.Ct. 465 (1987). The appellant's retrieval and handing over of the envelope to the undercover officer constitutes the "action indicating participation." The conviction for conspiracy was supported by substantial evidence, and is therefore affirmed.
 
 
 8
 The appellant also challenges his conviction for possession with intent to distribute and distribution of cocaine. The elements of the former offense are "(1) knowingly (2) possess[ing] a controlled substance (3) with intent to distribute it." United States v. Samad, 754 F.2d 1091, 1096 (4th Cir.1984). Distribution "requires either physical transfer of the drug or other acts in furtherance of the transfer." Crockett, 813 F.2d at 1316. Possession is undisputed. Knowledge can be inferred from the appellant's confession and his action in helping the officer to open the package and inspect its contents. The physical transfer took place when the appellant handed the brick of cocaine to the undercover officer. Substantial evidence was introduced of possession with intent to distribute and distribution, and the appellant's conviction on those two charges is affirmed.
 
 III
 
 9
 The appellant also challenges the district court's refusal to find that he was a "minimal" rather than a "minor" participant. Under Sec. 3B1.2 of the Guidelines, a "minor" participant is entitled to a two point reduction of his or her total offense level; a "minimal" participant is entitled to a four point reduction.
 
 
 10
 In reviewing a sentence imposed under the Guidelines, this Court must "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. Sec. 3742(e). This Court recently addressed the due deference standard, in the context of the quantum of participation under Sec. 3B1.2, in our decision in United States v. Daughtrey, No. 88-5151 (May 11, 1989). That case noted that "the due deference standard is ... the standard courts have long employed when reviewing mixed questions of fact and law," and that "[i]f the issue turns primarily on a factual determination, an appellate court should apply the 'clearly erroneous' standard." Id. slip op. at 9. Finally, we stated in Daughtrey that the question of the quantum of participation is "an 'essentially factual' question," subject to the clearly erroneous standard. Id. at 12.
 
 
 11
 The decision whether the appellant was a "minor" or "minimal" participant is to be guided by the Application Notes to Sec. 3B1.21, which state:
 
 
 12
 2. It is intended that the downward adjustment for a minimal participant will be used infrequently. It would be appropriate, for example, for someone who played no other role in a very large drug smuggling operation than to offload part of a single marihuana shipment, or in a case where an individual was recruited as a courier for a single smuggling transaction involving a small amount of drugs.
 
 
 13
 While those two examples are not far removed from the appellant's conduct, "minimal" participation is a matter of proportion: what would be "minimal" in a "very large drug smuggling operation" looms larger in a smaller conspiracy such as the Escobars'. There was evidence that Luis knew of the conspiracy, agreed to participate in return for a sum of money, retrieved the cocaine from its hiding place and gave it to the putative buyers. These actions constitute a not insignificant portion of the overall conspiracy to distribute cocaine to Jorge Valdez. It is not, therefore, clearly erroneous to find that this level of participation was "minor" rather than "minimal." The district court finding to this effect is therefore affirmed, as is the resulting sentence.
 
 
 14
 For the foregoing reasons, the district court decision is
 
 
 15
 AFFIRMED.