896 F.2d 1368
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mark Anthony THOMPSON, Defendant-Appellant.
 No. 89-5083.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Oct. 27, 1989.
Decided: Feb. 8, 1990.
 
 Roger A. Durban, on brief, for appellant.
 Henry E. Hudson, United States Attorney, Paul G. Cassell, Assistant United States Attorney, William Otis, Assistant United States Attorney, on brief, for appellee.
 Before K.K. HALL and PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Mark A. Thompson was convicted of one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). On appeal, he contends that the trial court committed reversible error in restricting his cross-examination of a government witness. Finding no error, we affirm.
 
 I.
 
 2
 Thompson was arrested at the National Airport after police discovered he was carrying "crack" cocaine in a shoulder bag. Thompson had disembarked from his flight in the company of his mother and his brother's girlfriend. Thompson and his companions were stopped by police and Thompson consented to a search of his shoulder bag. When this search initially uncovered two bags of what appeared to be crack cocaine, all three were taken to the airport police station and a further search revealed that the shoulder bag contained five additional packages of "crack" cocaine. A search of Thompson's mother revealed that she was carrying $5,600 in cash. After she had left the interrogation room, a small baggie of cocaine was discovered beneath a desk; Thompson had never been in that particular interrogation room.
 
 
 3
 During the cross-examination of the arresting officer, Thompson's counsel elicited the fact that Thompson's mother had been carrying a large amount of cash and that a "small quantity of cocaine or 'crack' " was later found in the interrogation room. Thompson's counsel then began to inquire about whether the purity of the drugs found in the shoulder bag was ever matched with the purity of the drugs discovered in the interrogation room.[1] The trial judge cut off this line of questioning by saying that "we are not going to try the other case."[2] Thompson's counsel then made the following proffer:
 
 
 4
 MR. DURBAN: Your Honor, I would proffer that this line of questioning is for the purpose of illuminating for the jury consistent with the defense's explanation and opening statement of what the charges are, of who was in actual knowledgeable possession of the drugs. Consistent with the defense theory that my client was a dupe, his testimony and evidence is relevant to the appropriate decision that a member of that party was in fact transporting a large amount of money consistent with drug dealing, and also that that individual was in possession of a small quantity of drugs, the purity of which was consistent with the larger quantity of drugs with which my client is charged with possessing, such that both quantity of drugs were from the same source.
 
 
 5
 The court adhered to its initial ruling to exclude the line of questioning about the purity of the interrogation room cocaine. The only issue presented in this appeal is whether the closing of this avenue of cross-examination constitutes reversible error.
 
 II.
 
 6
 The opportunity for effective cross-examination is the essential purpose of the Confrontation Clause. Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). However, any erroneous restriction of cross-examination is subject to the harmless error analysis set forth in Van Arsdall:
 
 
 7
 The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
 
 
 8
 Id. at 684. On this record, we have no difficulty in concluding that any error concerning the cross-examination of the arresting officer was harmless.
 
 
 9
 The evidence against Thompson was overwhelming. The arresting officer testified that when the drugs were initially discovered in the shoulder bag, Thompson immediately stated: "That's mine. They [his female companions] don't know anything about it. You can let them go." After he was arrested, the same officer testified that Thompson confessed that he was acting as a courier for a Washington drug dealer known as "T." The shoulder bag also contained a pair of blue jeans of the same brand and type as those worn by Thompson at the time of his arrest. The arresting officer also testified that no one other than Thompson had touched the shoulder bag from the time he exited the arrival area up until his arrest. Another police officer testified about a confession Thompson had made to him later that same day.
 
 
 10
 Further, Thompson was permitted to adduce testimony that the interrogation room drugs were discovered soon after his mother left the room and that she was found to be carrying a large amount of cash. Any possible advantage arising from an inference of a common source for the drugs would have been slight indeed. The dubious value of the testimony, coupled with the overall strength of the government's case, persuades us that, even assuming for the sake of argument that the trial court erred by restricting cross-examination regarding the comparative purity of the two sets of drugs, the error was clearly harmless. See, e.g., United States v. Crockett, 813 F.2d 1310, 1315-16 (4th Cir.1987).
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 The government appended to its brief a copy of a report purporting to be that of the analysis performed on the interrogation room drugs. The government concedes, however, that such report was not introduced into evidence and is not part of the record below. Accordingly, the report will not be considered by this Court
 
 
 [2]
 During trial, the government informed the court that Thompson's mother had not been charged in connection with the airport encounter