LOCALS 666 AND 780 OF the INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF the UNITED STATES AND CANADA, AFL–CIO, on their own behalf and on behalf of the affected individuals they represent, Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR, Raymond J. Donovan, Secretary of Labor, and William M. Otter, Wage and Hour Administrator, and National Aeronautics and Space Administration, James M. Beggs, Administrator, Stuart J. Evans, Administrator for Procurement and William Baulig, Procurement Officer for RFP 10–2–0049–3, Defendants-Appellees.

No. 84–1104.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1984.

Decided April 15, 1985.

As Amended April 19, 1985.

Bernard M. Mamet, Bernard M. Mamet & Assoc. Ltd., Chicago, Ill., for plaintiffs-appellants.

Gail C. Ginsberg, Asst. U.S. Atty., Dan K. Webb-U.S. Atty., Chicago, Ill., for defendants-appellees.

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

Before CUMMINGS, Chief Judge, ESCHBACH, Circuit Judge, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Plaintiffs-Appellants, Locals 660 and 780, etc. [hereinafter the Union], filed an action against Defendants-Appellees, the Department of Labor [DOL] and the National Aeronautics and Space Administration [NASA], charging them with a violation of the Service Contract Act [SCA], 41 U.S.C. §§ 351–58 (1976). The United States District Court for the Northern District of Illinois, Eastern Division, granted the DOL's and NASA's motion to dismiss, finding that the Union lacked standing to pursue its claim. This appeal followed.

### Facts

During the developmental phase of the Space Shuttle, NASA required a substantial amount of sophisticated photograph and film processing services. Union members, who were employees of Technicolor Government Services, Inc., performed the services.

However, when the Space Shuttle Program reached the operational phase, NASA anticipated that it would no longer need the expertise of Union members to perform still photography and certain film processing tasks. Thus, NASA consolidated functions performed under the Technicolor contract with several other Space Shuttle support functions into a single contract, the [Space] Shuttle Processing Contract [SPC].

NASA invited bids on the SPC and awarded it to Lockheed Space Operations Company on October 1, 1983. The SPC eliminated all still photography positions and numerous film processor positions. The SPC did not, however, eliminate the need for all still photography and film processing. Instead, NASA intended that the work would be performed by engineers, technicians, and inspectors as an incidental

part of their regular duties, using highly automated equipment.

■ The SCA, 29 C.F.R. § 4.4(c) (1983), covers the SPC. It requires the submission of a Form 98 when a successor contractor provides services "substantially the same as services being furnished for the same location by an incumbent contractor ..." and when the incumbent service employees are covered by a collective bargaining agreement. Moreover, submission of a Form 98 triggers the DOL's duty to make a determination of minimum wages and fringe benefits "for the classes of service employees who will perform the contract ..." 29 C.F.R. § 4.164(b)(2) (1983).

NASA submitted a Form 98 for the SPC but did not include still photographer and film processor positions because the SPC did not require them. Thus, the DOL did not issue a wage determination for those positions.

The Union brought an action against NASA and the DOL contending that NASA violated the SCA by allowing still photography and film processing to be included in the SPC without submitting the actual positions of still photographer and film processor to the Secretary of Labor for wage determination. In addition, the Union asserted that the DOL failed to return the Form 98 to NASA for correction.

The Union asked the district court to temporarily, preliminarily, and permanently enjoin NASA from awarding the SPC until the excluded positions were added to the Form 98. The district court dismissed the action, finding that the Union lacked standing because its complaint did not fall within the SCA's zone of interest.

### Issue

The issue before this Court is whether the former service employees and their representative Union have standing to sue under the Administrative Procedure Act [APA] when their work has been consolidated into a subsequent contract and awarded without a wage determination by the DOL.

■ Under the APA, 5 U.S.C. § 702 (1980),

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review.

However, a litigant seeking relief in federal court must satisfy *both* constitutional and prudential limitations in order to have standing to sue. The Article III constitutional limitations have been summarized by the Supreme Court in *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982):

... [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979) and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).

The prudential limitations on standing are those imposed by the courts themselves:

... Thus, this Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 [95 S.Ct. 2197, 2205, 45 L.Ed.2d 343] (1975). In addition, even when the plaintiff has alleged a redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and most appropriately addressed in the representative branches. *Id.* at 499–500 [95 S.Ct. at

2205–2206]. Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153 [90 S.Ct. 827, 830, 25 L.Ed.2d 184] (1970). *Valley Forge,* 454 U.S. at 474–75, 102 S.Ct. at 759–60.

■■■ The Union first alleges that it has been injured because work has been taken away from its members and is now being performed by others at lower wage rates. However, under the language of the SCA, loss of work is not an injury:

No contractor or subcontractor under a contract, which succeeds a contract subject to this chapter and under which substantially the same services are furnished, shall pay any service employee under such contract less than the wages and fringe benefits, including accrued wages and fringe benefits, and any prospective increases in wages and fringe benefits provided for in a collective-bargaining agreement as a result of arm's-length negotiations, to which such service employees would have been entitled if they were employed under the predecessor contract....

41 U.S.C. § 353(c) (1976). The statute only recognizes an "injury" to successor employees who are paid less than their predecessors for performing the same services. The status of predecessor employees is only relevant in establishing a wage and benefit floor for successor contracts. Because the Union members are "predecessors" under the SCA, their claim of lost jobs is not an "actual or threatened" injury for the purposes of standing under Article III. *Valley Forge,* 454 U.S. at 475–76, 102 S.Ct. at 760–61.

The Union's second claimed injury is that its members have been exploited by the failure of the DOL to make a wage determination. The Union claims that a wage determination keeps wages the same for successor employees performing the same services as their predecessors, thereby taking away a successor contractor's incentive to exploit.

We first note that, in the instant case, the same work is not being performed by others at lower wage rates. NASA no longer requires the sophisticated photographic services that it needed during the Space Shuttle's developmental phase. Engineers, technicians, and inspectors now fulfill the limited photography services as an incidental part of their duties, using highly automated cameras that do not require special expertise. The former positions have been eliminated rather than reclassified as the Union alleges.

■■■ Moreover, only employees and unions representing those employed under successor contracts may bring an action under the SCA challenging the practices of the successor employer. Displaced contractors, employees, and their unions are not within the zone of interests protected by the SCA. *See American Federation of Government Employees, AFL–CIO v. Stetson,* 640 F.2d 642, 646 (5th Cir.1981). Therefore, the Union and its members do not have standing to bring their claim.

The judgment of the district court is therefore AFFIRMED.