UNITED STATES of America, Appellee,

v.

Fred E. SNOWDEN, Appellant.

UNITED STATES of America, Appellee,

v.

Calvin D. BOATWRIGHT, Appellant.

UNITED STATES of America, Appellee,

v.

John C. BOATWRIGHT, Appellant.

Nos. 84–5061 to 84–5063.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 8, 1985.

Decided Aug. 12, 1985.

Daniel F. Goldstein, Baltimore, Md. (Brown & Goldstein, Baltimore, Md., on brief), for appellant Snowden.

Alan I. Baron, Baltimore, Md. (Finley, Kumble, Wagner, Heine, Underberg & Casey, Washington, D.C., on brief), for appellant Calvin D. Boatwright.

Thomas Dyson, Washington, D.C., for appellant John C. Boatwright.

Michael Schatzow, Asst. U.S. Atty., Baltimore, Md. (J. Frederick Motz, U.S. Atty., Baltimore, Md., on brief), for appellee.

Before WIDENER and ERVIN, Circuit Judges, and BOYLE,* District Judge.

TERRENCE WILLIAM BOYLE, District Judge:

On November 21, 1983, a jury found the three defendants guilty of various counts of mail fraud and found the defendant Snowden guilty of three counts of tax evasion. The charges arose from a kickback scheme in which construction managers of a church's building project paid about $80,000 to a minister of the church who was serving as business manager. The defendants appeal, arguing that their gifts were love offerings to a minister and their conduct was protected by the religion clauses of the First Amendment. They argue that there was an insufficient nexus between the mailings and the fraud. They also allege several evidentiary errors and raise the statute of limitations as a defense. Finding no error, we affirm their convictions.

I.

In 1977 the Riverdale Baptist Church of Largo, Maryland, retained Church Enterprises, Inc., a company then owned and operated by John C. Boatwright and Calvin D. Boatwright, to supervise the construction of a church building. The Boatwrights received a ten percent commission on the construction. From 1977 through 1979, while the church was under construction, the Boatwrights paid the Reverend Fred Snowden, who served as business manager of the church, about $80,000 in kickbacks. They drew checks from their personal accounts and from accounts in the names of various companies they owned. They made the checks payable to Snowden and he deposited them into his personal checking account.

In calendar year 1977, the Boatwrights received $284,792.94 in Church funds, and paid $47,525 to Snowden. Snowden's salary that year from the church was $12,-710.25. In 1978 the Boatwrights and their companies received $110,085.50 from the Church construction, and paid $18,905 to Snowden. Snowden's salary in 1978 from the church was $13,000. In 1979 the Boatwrights and their companies received $32,-468.50 from the Church construction, and paid $15,459.50 to Snowden. Snowden's salary in 1979 from the church was $13,-000. Snowden asked for at least five percent of the Boatwrights' fee to insure his good will. He also asked for and received payments from the Boatwrights' profits on equipment they rented to the church.

Neither Snowden nor the Boatwrights disclosed their financial relationship until a Church investigating committee confronted them well after the completion of the construction. There was evidence that this undisclosed relationship between the defendants operated to the financial detriment of the church and that had they known of the relationship, church officials would not have approved it.

The appellants argue that the District Court erroneously failed to dismiss the mail fraud counts on First Amendment grounds. First, they argue that charging Snowden with mail fraud for failing to disclose to the church the payments from the Boatwrights poses an impermissible risk of entangling the government in internal church affairs. Second, they argue that application of the mail fraud statute to the defendants' conduct will chill other ministers' legitimate conduct protected by the First Amendment. Third, they argue that absent specific congressional intent, the statute should not be applied to internal church matters.

■ On appeal, the defendants do not contest the jury's finding that this kickback scheme was not a series of legitimate love offerings to a minister of the Gospel. Indeed, the notations on the checks belie any such conclusion. The defendants seem to argue that because the victim of this scheme was a church, the First Amend-

* Honorable Terrence W. Boyle, United States District Judge for the Eastern District of North Carolina, sitting by designation.

ment exempts them from criminal prosecution. This court will not accept such argument.

The Free Exercise clause of the First Amendment is to be used as a shield to protect persons in the free exercise of their religion. Here the defendants seek to use the clause as a sword against the victim, the church. Under the defendants' theory the church would be stripped of the law's protection.

■ The defendants rely on *NLRB v. Bishop of Chicago*, 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), but the facts of *Bishop of Chicago*, are quite distinguishable from the facts of this case. The chief distinction is that the Catholic Bishop argued that application of the NLRA to his school interfered with his control and direction of the schools' religious teaching, whereas the appellants here make no claim that their criminal prosecutions interfered with the religious activities of Snowden or the Riverdale Baptist Church. While it is true that "an Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available," *id.* at 500, 99 S.Ct. at 1318, application of the mail fraud statute to the conduct of these defendants simply does not violate the Constitution.

A second difference is that the church in *Bishop of Chicago* objected to the governmental interference. In this case the church welcomed the protection of the government's investigation.

In fact the defendants do not argue that application of the statute to these defendants infringed their free exercise rights or entangled the government in the internal affairs of this church. Instead, they argue that application of the statute here poses a substantial risk of excessive entanglement and a potential for chilling legitimate, protected church administrative decisions.

The First Amendment rights of these defendants are not involved in this case, and this court will not address the effect of this statute on the rights of potential litigants. Nor can these defendants assert the rights of Riverdale Baptist Church. Constitutional rights are not fungible commodities to be bartered among interested bystanders, *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

## II.

The defendant Snowden asked that if his mail fraud convictions were overturned on First Amendment grounds, his tax evasion convictions be overturned on that basis, too. Since this court has determined that the First Amendment is not involved in this case, this argument needs no attention.

## III.

■ An officer of the bank providing construction financing for the church testified that about one million dollars was missing from the construction funds. The testimony was unexpected and following it the judge excused the jury from the courtroom.

When the jury returned, the judge ordered the testimony stricken and instructed the jury to disregard it because the witness did not have "sufficient [information] to enable him to make those statements and those opinions." Defense counsel did not object to this instruction or request any additional instruction.

The defendants argue that the testimony, in effect, charged them with embezzling one million dollars, an act not charged in the indictment.

Assuming *arguendo* that the testimony was not proper, when it is considered in light of all the surrounding circumstances, including the fact that it was stricken and the jury was instructed to disregard it, it did not result in any impermissible prejudice to the defendants and its treatment by the trial court was not reversible error. This series of events did not warrant a mistrial.

## IV.

■ Snowden next assigns as error the exclusion of statements of other ministers about money offerings by John Boatwright

to them. The largest was $2450 under materially different circumstances. The judge properly excluded this testimony which was offered under Rule 404(b) Fed. R.Evid. It fails, if for no other reason, on relevance.

## V.

■ The government introduced the workpapers for Calvin Boatwright's 1977 tax return and John Boatwright's 1976, 1977, 1978 and 1979 returns. Those workpapers, in conjunction with the testimony of the tax return preparers, revealed that every relevant check to Snowden, except one, was claimed by the Boatwrights as a business expense deduction and not as a charitable contribution. The witness who prepared John Boatwright's returns had never heard the term "love offering" until moments before entering the courtroom on the day she testified. Counsel for Snowden did not object to its admission or to the limiting instruction given by the court. Admission of the returns was not plain error.

## VI.

■ When the Church began to receive funds from its construction lender in early 1978, Snowden and the Boatwrights prepared a monthly certificate and application for payments. These documents reflected the status of performance on the construction project and were used by the architect, the engineer, the lender and others to gauge the progress of the work. The defendants prepared these documents and intended that the construction lender rely on them to advance money for the project. The defendants knew that these documents would be transmitted by mail. Based on these documents the construction lender advanced funds for the project.

The defendants moved for judgment of acquittal claiming there was an insufficient nexus between the mailings and the scheme. The Supreme Court has stated that the mail fraud statute was not designed to reach all frauds "but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Kann v. United States*, 323 U.S. 88, 94, 65 S.Ct. 148, 150, 89 L.Ed. 88 (1944). Again, in *United States v. Maze*, 414 U.S. 395, 402, 405, 94 S.Ct. 645, 649, 651, 38 L.Ed.2d 603 (1974) the Court stated:

> Congress could have drafted the mail fraud statute so as to require only that the mails be in fact used as a result of the fraudulent scheme. But it did not do this; instead it required that the use of the mails be "for the purpose of executing such scheme or artifice...."

Since the jury convicted the defendants of mail fraud, this court must consider the evidence in the light most favorable to the government. *Jackson v. Virginia*, 443 U.S. 307, 399, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The question is whether the jury could have reasonably concluded that the mailings were for the purpose of executing the scheme.

The court is satisfied that these mailings furthered the scheme. The mails were "used prior to, and as one step toward, the receipt of the fruits of the fraud." *Kann v. United States*, 323 U.S. 88, 94, 65 S.Ct. 148, 150, 89 L.Ed. 88 (1944). It is not necessary that the scheme contemplate the use of mails as an essential element. *United States v. Young*, 232 U.S. 155, 34 S.Ct. 303, 58 L.Ed. 548 (1914); *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954).

The court is also satisfied that the defendants "caused" the mailing. "Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended then he 'causes' the mails to be used." *Pereira*, 347 U.S. at 8–9, 74 S.Ct. at 362–63. The mailing of these reports form the basis for counts one through six of the indictment. The court finds a sufficient nexus between the mailings and the fraud.

Counts 7 and 8 involve a scheme by the defendants to swindle $64,000 from a businessman under the guise of borrowing this money as a part of the church construction financing. The defendant Snowden altered a resolution of the church trustees and mailed the businessman copies of fictitious letters concerning the permanent lender's escrow requirements. A portion of the money, thus obtained, was paid out among the defendants. The evidence was ample to support conviction on these counts.

■ Lulling letters sent to innocent victims for the purpose of advancing a fraudulent and criminal scheme are sufficient to charge mail fraud, even where the letters follow the acquisition of the money in question. *United States v. Sampson*, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); *United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).

### VII.

■ The defendants argue that the first three counts of the superseding indictment allege charges barred by the five-year statute of limitations. The superseding indictment deleted the title "Rev." from the defendant Snowden's name (at the defendants' request) and included the word "undisclosed" to describe the relationship between the defendants. These changes are trivial or innocuous and the superseding indictment relates back to the date of original indictment. *United States v. Grady*, 544 F.2d 598 (2nd Cir.1976); *United States v. Friedman*, 649 F.2d 199 (3rd Cir.1981).

Because the defendants' trial was without prejudicial error, the judgment of the district court is AFFIRMED.

ERVIN, Circuit Judge, concurring:

While I agree with the result reached by the majority opinion and accept much of its reasoning, I write separately to voice my view that the majority is incorrect in stating that the appellants' first amendment rights are not implicated on the facts in this case. Instead, I believe that these first amendment rights are involved, but have not been violated here.

The Supreme Court has long held that the freedom of one's beliefs is absolutely protected by \the first amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S.Ct. 900, 903, 84 L.Ed. 1213 (1940). However, the Court has also recognized that "however free the exercise of religion may be, it must be subordinate to the criminal laws of [our] country." *Davis v. Beason*, 133 U.S. 333, 342–343, 10 S.Ct. 299, 300–301, 33 L.Ed. 637 (1890). Consequently, "the First Amendment does not insulate a church or its members from judicial inquiry when a charge is made that their activities violate a penal statute." *United States v. Moon*, 718 F.2d 1210, 1227 (2d Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984).

To convict Snowden and and the Boatwrights of mail fraud in this case, the jury had to conclude that these appellants possessed the specific intent to defraud the church congregation. To this end, the district court properly permitted the jury to determine whether Snowden and the Boatwrights intended their payments to be as "love offerings" under Baptist church doctrine or as "kickbacks" in a scheme to defraud the church. Such an inquiry is proper under first amendment analysis since, "although the validity of religious beliefs cannot be questioned, the sincerity of the person claiming to hold such beliefs can be examined." *United States v. Rasheed*, 663 F.2d 843, 847 (9th Cir.1981), *cert. denied*, 454 U.S. 1157, 102 S.Ct. 1031, 71 L.Ed.2d 315 (1982); *see United States v. Seeger*, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Since the jury concluded that these payments were "kickbacks" and not "love offerings", the mail fraud convictions of Snowden and the Boatwrights were proper and did not violate the first amendment.

Unlike the majority, however, it is my view that such a first amendment analysis is the most appropriate method of resolving this case. Otherwise, I agree with the majority that fraudulent activity performed in the name of religion cannot be protected

by the first amendment. *Cantwell,* 310 U.S. at 306, 60 S.Ct. at 904.