Raymond T. LURZ, Jr., Plaintiff,

v.

UNITED STATES PAROLE COMMISSION, DEPARTMENT of JUSTICE, Edwin Meese, Attorney General of the United States, Benjamin F. Baer, Chairman, United States Parole Commission, Dudley Blevins, Warden, United States Penitentiary, Terre Haute, Indiana, Respondents.

Cause No. TH 86–154–C.

United States District Court,
S.D. Indiana,
Terre Haute Division.

March 30, 1987.

Raymond T. Lurz, pro se.

John D. Tinder, U.S. Dist. Atty., Indianapolis, Ind., for respondents.

## ENTRY

BARKER, District Judge.

This cause is before the Court upon respondents' return to order to show cause in response to petitioner's petition for writ of habeas corpus. This cause was originally filed in the District Court for the District of Columbia, where petitioner was granted leave to proceed in forma pauperis.

Petitioner originally brought suit seeking injunctive relief

to enjoin defendants to perform and comply with the provisions of the Comprehensive Crime Control Act of 1984 ... by setting a release date for plaintiff ... pursuant to Section 235(b)(3) of the Act within applicable guidelines, and to set such release date early enough to permit consideration of an appeal before ... the abolishment of the Parole Commission ("P.C.") becoming final [on] October 12, 1989.

The District Court for the District of Columbia, in an order dated May 30, 1986 [Available on WESTLAW, DCT database], found that "[h]ere the plaintiff has unquestionably challenged the 'duration of his physical imprisonment' and 'seeks a determination that he is entitled to ... a speedier release.'" Order of May 30, 1986, p. 2 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439

(1973). *Preiser* held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Id.* at 500, 93 S.Ct. at 1841. The District Court thus treated Lurz's complaint as a habeas corpus petition. The District Court went on to state that:

[i]n order for a court to entertain a habeas corpus action, it must have jurisdiction over the petitioner's custodian. *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484 [93 S.Ct. 1123, 35 L.Ed.2d 443] (1973); *Strait v. Laird,* 406 U.S. 341 [92 S.Ct. 1693, 32 L.Ed.2d 141] (1968) [1972]; *Schlanger v. Seamans,* 401 U.S. 487 [91 S.Ct. 995, 28 L.Ed.2d 251] (1971); *Guerra v. Meese,* 786 F.2d 414 (D.C.Cir.1986); *Sanders v. Bennett,* 148 F.2d 19, 20 (D.C.Cir.1945) ("proper person to be served [in a habeas action] is the warden of the penitentiary in which the prisoner is confined rather than an official in Washington, D.C. who supervises the warden.... [O]nly courts having jurisdiction over the warden ... can grant a writ"); *Starnes v. McGuire,* 512 F.2d 918, 932 (D.C.Cir. 1974) ("residence of the immediate custodian (and thus the place of confinement) is the correct forum"); *Billiteri v. United States Board of Parole,* 541 F.2d 938 (2d Cir.1976); *Ross v. Mebane,* 536 F.2d 1199, 1201 (7th Cr. [Cir.] 1976); *United States ex rel. Rudick v. Laird,* 412 F.2d 16 (2d Cir.), *cert. denied,* 396 U.S. 918 [90 S.Ct. 244, 24 L.Ed.2d 197] (1969). This Circuit has defined the custodian as "the person having a day-to-day control over the prisoner." *Guerra v. Meese,* 786 F.2d at 416. The Parole Commission may not properly be characterized as the prisoner's custodian even where the prisoner challenges the Commission's action or inaction on the sentence. *Id.* at 416–17.

Order of May 30, 1986 at 2.

At the time of the District Court's ruling, Lurz was incarcerated at the United States Penitentiary in Terre Haute, Indiana. After noting that the Warden at Terre Haute

exercised sufficient control over Lurz to qualify as his custodian for purposes of this action, the court stated that "[c]learly this Court, located as is [sic] is in the District of Columbia, cannot properly exercise jurisdiction over a custodian located nearly halfway across the country."

The District of Columbia court then transferred Lurz's case to this Court, whose territory includes the federal prison in Terre Haute, Indiana, after concluding that the " 'interests of justice' would be better served by a transfer rather than a dismissal." Order at 3 (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466, 82 S.Ct. 913, 915, 8 L.Ed.2d 39 (1962) and *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C.Cir.1983)).

According to petitioner's unchallenged affidavit, petitioner was transferred sometime between August 12, 1986, and September 15, 1986 from the federal penitentiary in Terre Haute, Indiana, to the federal penitentiary in Ashland, Kentucky.

While the Seventh Circuit also follows the rule that the proper person to be sued under the habeas corpus statute is the person acting as petitioner's custodian, *Hanahan v. Luther*, 760 F.2d 148, 151 (7th Cir. 1985); *Reimnitz v. State's Attorney of Cook County*, 761 F.2d 405, 408 (7th Cir. 1985), "[i]t is well established that jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodian change." *Santillanes v. United States Parole Com'n*, 754 F.2d 887, 888 (10th Cir.1985). *See also Ahrens v. Clark*, 335 U.S. 188, 193, 68 S.Ct. 1443, 1445, 92 L.Ed. 1898 (1948); *Weeks v. Wyrick*, 638 F.2d 690, 692–93 (8th Cir.1981); *McClure v. Hopper*, 577 F.2d 938, 939–40 (5th Cir.1978), *cert. denied*, 439 U.S. 1077, 99 S.Ct. 854, 59 L.Ed.2d 45 (1979); *Smith v. Campbell*, 450 F.2d 829, 831–33 (9th Cir. 1971).

Mr. Rockne Chicknell, attorney with the office of General Counsel for the United States Parole Commission, summarized the particulars of Mr. Lurz's incarceration in his declaration of April 10, 1986:

Mr. Lurz was initially sentenced on May 11, 1979 to a 15 year term of imprisonment by the U.S. District Court for the Middle District of Florida for conspiracy to manufacture a schedule II controlled substance, traveling interstate to promote unlawful acts, and attempting to manufacture PCP. On June 13, 1979 Mr. Lurz received a consecutive 3 year term of imprisonment from the same court for failure to appear. On February 1, 1980 Mr. Lurz was sentenced by the U.S. District Court for the District of Maryland to a 5 year term of imprisonment for conspiracy to manufacture and distribute narcotics and a 30 year term of imprisonment for a continuing criminal enterprise (21 U.S.C. Sec. 848). These sentences were designated to run concurrently with each other and concurrently with Mr. Lurz's earlier sentences. Subsequently Mr. Lurz's 5 year term from the District of Maryland for conspiracy to manufacture and distribute narcotics was vacated and his continuing criminal enterprise sentence was reduced to 20 years imprisonment. Therefore Mr. Lurz is presently serving a total term of imprisonment of 20 years, 8 months and 21 days, which expires on January 2, 2000. His tentative release date on good time deductions is March 12, 1993.

Mr. Lurz was afforded his initial parole hearing on August 16, 1983 at the U.S. Penitentiary, Lewisburg, Pennsylvania. (See Exhibit 2). This hearing was conducted with respect to all of Mr. Lurz's federal sentences, with the exception of his sentence for the continuing criminal enterprise. Following this hearing, by a notice of action dated September 16, 1983, the Commission informed Mr. Lurz that he was continued to a presumptive parole after the service of 80 months (December 12, 1985) on his sentences from the Middle District of Florida.

On October 10, 1985 the Commission afforded Mr. Lurz a statutory interim/rescission hearing at the U.S. Penitentiary, Terre Haute, Indiana.... The Commission conducted this proceeding as a rescission hearing since Mr. Lurz had

committed new criminal conduct and various rule infractions in the institution since his initial parole hearing. By a notice of action dated October 30, 1985 the Commission informed Mr. Lurz of the following decisions in his case: 1) rescind presumptive parole date of December 12, 1985; and 2) continue to a presumptive parole on October 12, 1987 to the nonparolable sentence only....

By a form dated November 20, 1985, Mr. Lurz appealed these determinations to the National Appeals Board pursuant to 28 C.F.R. Sec. 2.26. By a notice of action dated February 5, 1986 the Commission informed Mr. Lurz that the previous decisions in his case affirmed.

Respondent's Return to Order to Show Cause, Exhibit 1, at 1–2.

Petitioner initially brought this suit *pro se*, but was subsequently appointed counsel. While petitioner's arguments throughout this case have been somewhat contradictory, the Court can conclude that petitioner has two possible theories which he feels entitle him to relief. One of these theories, if followed, would give petitioner parole eligibility, and a consequent earlier release, under a previously unparolable conviction. The other theory would require the respondents to set a release date for petitioner based upon the current, more generous, "good time" rule than will be allowed under the recent enactment. This theory assumes that petitioner's future good time would otherwise be based on the 1984 amendments.

## I. Parole

■ Petitioner was given a twenty (20) year sentence under 21 U.S.C. § 848 by the United States District Court for the District of Maryland on February 1, 1980, before the passage of the Crime Control Act of 1984.

Section 848(c), originally enacted in 1970, had as one of its goals the prevention of any mitigation of its penalties. It stated "[i]n the case of any sentence imposed under this section, imposition or execution of such sentence shall not be suspended, probation shall not be granted, and section 4202 of Title 18 and the Act of July 15, 1983 (D.C.Code, secs. 24–203 to 24–207), shall not apply." Section 4202 was the original enumeration given to the statute authorizing the parole commission to establish parole eligibility. Under this sentence, petitioner is not entitled to parole.

The Crime Control Act, however, has significantly changed the operations of the federal criminal justice system. Petitioner now raises some interesting questions concerning the application and retroactivity of the Act.

One section of the Crime Control Act, Pub.L. 98–473, Title II, §§ 224(c), 235, October 12, 1984, 98 Stat. 2030, 2031, listed under the subsection "technical and conforming amendments," provided that "[s]ection 408(c) (21 U.S.C. 848(c)) is amended by deleting 'and section 4202 of Title 18 of the United States Code.'" Petitioner argues that by removing the ban on parole eligibility for a conviction under § 848, Congress made petitioner retroactively eligible for parole on his § 848 conviction.

The general savings statute, 1 U.S.C. § 109, expressly states that the enactment or repeal of a statute "shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred by such statute" unless the new enactment or appeal "expressly provide[s]" for such. Petitioner alleges the Crime Control Act of 1984 expressly provides for the retroactive repeal of the parole prohibition. This Court can find no such express provision.

Petitioner claims that § 235(b)(3) conflicts with § 109, and that such a conflict constitutes an express provision sufficient to institute retroactivity. Section 235(b)(3) of Public Law 98–473 states that

The United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline. A release date set pursuant to this paragraph shall be set early enough to permit consideration of an appeal of the release date, in accordance with Parole Commission procedures, before the expi-

ration of five years following the effective date of this Act.

18 U.S.C. § 3551, historical note. 98 Stat. 473, § 235(b)(3) (1984).

Under petitioner's interpretation of this statute, respondent is required to set a release date for all prisoners held by respondent five years after the Crime Control Act's effective date, minus whatever time is deemed reasonable to allow an appeal. Petitioner argues that this release date should be based on the parole guidelines which would apply if petitioner's § 848 conviction were an ordinary, parolable sentence. Petitioner further believes that § 235(b)(3) requires respondent to set a release date within a prisoner's parole guideline, instead of the guideline serving as a presumption, which is the current practice. Petitioner argues that these express requirements under § 235(b)(3) override § 109.

Petitioner misinterprets § 235(b)(3) by ignoring the effect of the word "applicable." Petitioner was sentenced under a statute which precluded parole consideration. Therefore, the parole guidelines were not then and are not now applicable to petitioner. Section 235 was designed to prevent problems which would arise after the dissolution of the United States Parole Commission when prisoners, eligible for parole, are unable to administratively exercise their parole rights. It was not designed to produce the significant substantive changes which petitioner envisions. The Court must conclude that § 235(b)(3) does not constitute an express provision contravening 1 U.S.C. § 109, and consequently does not override § 109's assertion that penalties should not be subsequently mitigated or nullified. Petitioner has shown no reason why he should be eligible for parole due to the passage of the Crime Control Act of 1984. Petitioner's sentence is governed by the law as it existed at the time of his crime, so his petition for habeas corpus relief must be DENIED on this ground.

## II. Good Time Credit

Petitioner also presents an alternative theory which he believes will entitle him to relief. Petitioner states in his response to respondents' return to order to show cause that he is asking the Court "to force the P.C. to set a release date, within his guidelines, on his twenty (20) year sentence, Title 21 U.S.C. Section 848, or set a release date of November 1, 1986, [now November 1, 1987] to which petitioner is entitled."

Section 235(b)(3) of Public Law 98–473 states "[t]he United States Parole Commission shall set a release date, for an individual who will be in its jurisdiction the day before the expiration of five years after the effective date of this Act, that is within the range that applies to the prisoner under the applicable parole guideline...." Petitioner thus alleges that this section requires the Commission to set a release date for his conviction under 21 U.S.C. § 848. Under current law, petitioner would be eligible for good time at a rate of over ten days of credit per month served. *See* 18 U.S.C. § 1461. Under the Crime Control Act of 1984, however, petitioner could receive only fifty-four (54) days of good time credit per year served. *See* 18 U.S.C. § 3624(b). Petitioner, therefore, seeks a fixed release date to prevent the application of the lower good time rate. Petitioner makes this point in his complaint:

Under the Old law good time allowances were liberal: Automatically ten days per month credited for good conduct to a prisoner serving ten years or more (Like Lurz); Five additional days per month for Industrial or Meritorious service; and additional lump sum awards of up to whatever can be absorbed (allowed) under Section 4161 et. seq. A prisoner under the Old law could effectively earn and otherwise be awarded up to fifty percent of the term of his sentence. 18 U.S.C. Section 4161–66. Exhibit D.

Under the New Act, a prisoner is awarded only fiftyfour [sic] days per year with no provisions for additional Industrial, Meritorious or Lump sum allowances. Under the New Act, a prisoner could effectively earn no more than fiftyfour [sic] days per year or about fifteen percent of the term of his sentence. See Exhibit E.

The Act as it relates to the repealed good time allowances is more onerous than the old law because it increases punishment for prisoners sentenced prior to November 1, 1986 by reducing the amount of good time which can be deducted from a prisoner's sentence.

The repeal of the good time allowances, although saved until 1989 by Section 235(b)(1)(B), is unconstitutional as applied to Lurz who is currently earning fifteen days per month in good time credits.

The repeal of the good time allowances as applied to Lurz, who is serving a twenty year sentence, is retrospective because it applies to Lurz (Punishment) sentenced imposed before enactment of the repeal....

The repeal of good time allowances disadvantages Lurz causing his punishment to be more onerous than before enactment of the repeal.

Section 218(a)(4) of the Act repealing good time allowances reducing the amount of good time which can be deducted from Lurz sentence is unconstitutional as an ex post facto law as applied to Lurz whose crime was committed and whose sentence was imposed before the Act was enacted; The Act being retrospective in that it attaches legal consequences to acts completed before its effective date and being disadvantageous to Lurz in that it lenghtens [sic] the period he must spend in prison. *Weaver v. Graham,* 450 U.S. 24 [101 S.Ct. 960] 67 L.Ed[.]2d 17, 101[.]

Petitioner's complaint at 6–7.

A preliminary question exists, however. Does the existence of the new statute, or any conduct by respondent based upon that statute, give rise to a cognizable claim? In the instant case, petitioner has not been given a release date, and he asks this Court to require respondents to set such a date for petitioner on his § 848 conviction. This is because petitioner believes a later release date proceeding will utilize the less generous good time statute, 18 U.S.C. § 3624.

■ A litigant seeking relief in federal court must satisfy both the constitutional and prudential limitations in order to have standing to sue. *Locals 666 and 780 v. United States Dept. of Labor,* 760 F.2d 141, 143 (7th Cir.1985). The Article III constitutional limitations were summarized by the Supreme Court in *Valley Forge Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982):

> ... [A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant," *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 [99 S.Ct. 1601, 1608, 60 L.Ed.2d 66] (1979) and that the injury "fairly can be traced to the challenged action" and "is likely to be redressed by a favorable decision," *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, 28, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976).

(quoted in *Locals 666,* 760 F.2d at 143). In order to satisfy the jurisdictional prerequisite of standing, an abstract injury is not enough; instead the plaintiff must show he has sustained or is immediately in danger of sustaining some direct injury as a result of the challenged official conduct, and the injury or threat of injury must be both real and immediate, and not conjectural or hypothetical. *Palmer v. City of Chicago,* 755 F.2d 560 (7th Cir.1985).

The prudential limitations on standing, however, are those imposed by the courts themselves:

> ... Thus, this Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin,* 422 U.S. 490, 499 [95 S.Ct. 2197, 2205, 45 L.Ed.2d 343] (1975). In addition, even when the plaintiff has alleged a redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance"

which amount to "generalized grievances," pervasively shared and most appropriately addressed in the representative branches. *Id.* at 499–500 [95 S.Ct. at 2205]. . . .

*Locals 666,* 760 2d at 143. These "prudential limitations" have also been addressed, using a similar analysis, in terms of "ripeness" for adjudication. *See International Union v. Facet Enterprises,* 601 F.Supp. 292 (S.D.Mich.1984).

■ In the instant case, petitioner has failed to satisfy both the constitutional requirements and the prudential limitations. Respondents have not applied the lower good time rate to petitioner, nor have they threatened to. There is also no "action" of respondent which can properly be challenged. Any injury received by petitioner would come from the application of the lower good time rate, and at the present, such an application is conjectural at best. Similarly, petitioner's issues present "problems of prematurity and abstractness" which under the ripeness doctrine should properly prevent adjudication at the present. *Buckley v. Valeo,* 424 U.S. 1, 114 (1976); *International Union,* 801 F.Supp. at 296. "The question of abstractness or the concreteness of issues in the ripeness doctrine is clearly akin to the specific personal injury component of the standing doctrine." *Id.* The differences in the doctrines are a matter of degree, with the prudential concerns establishing a higher barrier. Here, plaintiff fails to satisfy either standard, as his "injury" is insufficient under both Article III and prudential tests.

An additional challenge alluded to by petitioner is that the statute is *per se* unconstitutional in that it was intended to be retroactively applied to prisoners in violation of the *ex post facto* clause of the Constitution. Such a *per se* unconstitutionality might arguably constitute a sufficient threatened injury to satisfy standing requirements.

A court's first task in approaching a question of statutory interpretation is to determine whether Congress had any intent with respect to the relevant issue, and, if Congress did have such an intent, that intention is law, and must be given effect. *American Cetacean Soc. v. Baldrige,* 768 F.2d 426 (D.C.Cir.1985), *cert. granted Japan Whaling Ass'n v. American Cetacean Society,* — U.S. —, 106 S.Ct. 787, 88 L.Ed.2d 766, *rev'd Japan Whaling Ass'n v. American Cetacean Soc.,* — U.S. —, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986). *See also Tremps v. Ascot Oils, Inc.,* 561 F.2d 41 (7th Cir.1977). The Crime Control Act of 1984, however, gives no indication in its statutory language or in its legislative history that Congress intended the new good time rates to be applied to prisoners convicted and sentenced when the old good time statute was in effect.

■ A fundamental rule of statutory construction requires that where a statute can be interpreted in two ways, one of which violates the Constitution and the other does not, the court must interpret the statute in such a way as to preserve its constitutionality. *See e.g. St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 101 S.Ct. 2142, 68 L.Ed.2d 612 (1981); *United States v. Snowden,* 770 F.2d 393 (4th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 540, 88 L.Ed.2d 470 (1985); *Irving v. Clark,* 758 F.2d 1260 (8th Cir.) probable jurisdiction noted *Hodel v. Irving,* — U.S. —, 106 S.Ct. 783, 88 L.Ed.2d 761 (1986); *Awa v. Guam Memorial Hosp. Authority,* 726 F.2d 594 (9th Cir. 1984); *Brach v. Amoco Oil Co.,* 677 F.2d 1213 (7th Cir.1982); *International Union, etc. v. Nat. Right to Work,* 590 F.2d 1139 (D.C.Cir.1978). This is such a case. Thus, applying this rule, the Court must conclude that the provisions of the Crime Control Act of 1984 do not operate so as to apply new statute good time rates to old good time statute persons such as petitioner.

As there is no shown intent on the part of Congress to apply the statute retroactively, any *ex post facto* issue based on retroactivity must be based on the actual application of the statute rather than a *per se* unconstitutionality. Because respondents have not applied the new law to petitioner, it is not necessary for this Court to issue an order preventing the respon-

**448**

dents from potentially violating the law in the future. *Cf. Securities and Exchange Commission v. Savoy Industries, Inc.*, 665 F.2d 1310 (D.C.Cir.1981) ("A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future, unless enjoined, may fairly be anticipated from the defendant's conduct in the past." (quoting *N.L.R.B. v. Express Publishing*, 312 U.S. 426, 435, 61 S.Ct. 693, 699, 85 L.Ed. 930 (1941)).

In conclusion, petitioner's second ground does not present a sufficient case or controversy to establish standing before this Court, and it is not timely for proper adjudication. Therefore, petitioner has failed to state a cognizable claim under the federal habeas corpus statute, 28 U.S.C. § 2241, *et seq.* and his petition must be DENIED and this cause DISMISSED.

IT IS SO ORDERED.