877 F.2d 61
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul JACKSON, Defendant-Appellant.
 No. 88-5122.
 United States Court of Appeals, Fourth Circuit.
 Argued March 8, 1989.
Decided June 6, 1989.
 
 David Benjamin Smith (English & Smith on brief) for appellant.
 Bonnie S. Greenberg (Jean Barrett, Special Assistant United States Attorney on brief) for appellee.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and FRANK A. KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Paul Jackson appeals from a judgment of the district court entered after a jury verdict finding him guilty of possession with intent to distribute more than 500 grams of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) and of interstate travel in aid of racketeering in violation of 18 U.S.C. Secs. 1952 and 2. He was sentenced to concurrent terms of sixty-three months on the cocaine charge and sixty months on the Travel Act charge. In addition, the district court imposed a $10,000 fine for the cocaine charge, a $12,500 fine for the Travel Act charge, and supervised release sentences of five years on each count, to run concurrently, as well as a special assessment of one hundred dollars.
 
 
 2
 On January 26, 1988, two Drug Enforcement Administration agents approached sixteen-year-old Malena Seabrooks at Washington National Airport after she deplaned from a flight originating in Miami, Florida, and made two telephone calls. She consented to a search of her traveling bag, and the agents discovered two packages of cocaine, one containing 893 grams of cocaine hydrochloride and the other containing 180 grams. After she was arrested for possession of the cocaine, she agreed to cooperate in making a controlled delivery to the individual she was instructed to contact and who was to pick her up at the airport.
 
 
 3
 The agents replaced only the smaller package of cocaine in Seabrooks' bag which was then given back to her. At an agent's request, Seabrooks again called the telephone number she had called previously. This time she was called back immediately and approximately five minutes later was approached by Jackson who spoke with her briefly and then took possession of the bag containing cocaine. He was then arrested.
 
 
 4
 According to the government's evidence, after being arrested Jackson told the agents that he travelled to the airport to pick up Seabrooks and knew that she was in possession of drugs. He explained that he was being paid $700 to pick her up and that he had been instructed to take the packages to another person at a parking lot in Maryland. According to the DEA agent, who testified at trial, Jackson also stated to that agent that he had "either dropped off or picked up individuals at the [Washington National] airport on three other occasions."
 
 
 5
 Jackson's testimony at trial, however, differed from the agent's account. He denied making the statements attributed to him by the DEA agent and claimed that the agent had threatened him with bodily harm. Further, Jackson claimed he was at the airport because his cousin, Dale Reed, telephoned him and asked him to pick up Seabrooks. He stated that when he met her she simply handed him her bag and asked him to help with her luggage. Reed corroborated Jackson's version of the events by testifying that Seabrooks telephoned him to request a ride to her home and, since he did not have a car, he called Jackson at his home to ask him to pick up Seabrooks.[1]
 
 
 6
 On appeal, Jackson concedes that the evidence was sufficient to convict him of possession with intent to distribute cocaine. He contends, however, that the evidence was insufficient to convict him of possession of more than 500 grams of cocaine to which a mandatory five-year term of imprisonment applies. See 21 U.S.C. Sec. 841(b)(1)(B). The court instructed the jury on theories of actual possession, constructive possession, and aiding and abetting another to commit a crime. In viewing the evidence in a light most favorable to the government, United States v. Snowden, 770 F.2d 393, 397 (4th Cir.), cert. denied, 474 U.S. 1011 (1985), we think the evidence so convincingly supports a finding of both constructive possession and aiding and abetting that no further discussion apart from the above factual summary is necessary.
 
 
 7
 Jackson also contends that the district court erred in its jury instruction on the Travel Act count. We agree that the district court's instruction concerning the second count of the indictment was, at best, confusing and constitutes prejudicial error. Count II of the indictment, in effect, charged that Jackson aided and abetted Seabrooks in traveling in interstate commerce from Miami, Florida, to Washington National Airport in Arlington, Virginia. It stated:
 
 
 8
 On or about January 26, 1988, defendant, PAUL JACKSON did aid, abet, induce and procure another to willfully travel in interstate commerce from Miami, Florida to Washington National Airport in Arlington, Virginia, within the Eastern District of Virginia, with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: the distribution and possession with intent to distribute cocaine, a Schedule II, narcotic controlled substance, and thereafter the said defendant, PAUL JACKSON, did perform acts, and aid, abet, induce and procure another to perform acts, to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of said unlawful activity.
 
 The court, however, told the jury:
 
 9
 It is charged in Count II of the indictment that: On or about January 26, 1988, at the Washington National Airport, in Arlington, Virginia, in the Eastern District of Virginia, the defendant Paul Jackson did knowingly, unlawfully and intentionally travel or transport between states in aid of racketeering enterprises.
 
 
 10
 In explaining the actions which could have made Jackson guilty of violating the Travel Act, the court told the jury:
 
 
 11
 First: That the defendant Paul Jackson on or about January 26, 1988, traveled in interstate commerce or used the facilities in interstate commerce;
 
 
 12
 Second: That the travel or use of the facilities was done with the specific intent to further the unlawful activity of possession with intent to distribute cocaine in Arlington County, in the Eastern District of Virginia, in violation of the laws of the United States;
 
 
 13
 Third: That the defendant, following such travel and use, performed or attempted to perform acts of possession with intent to distribute cocaine as charged in the indictment.
 
 
 14
 The court's instruction simply does not instruct the jury concerning the violation charged in the indictment and conceivably allowed the jury to find that Jackson violated the statute simply by crossing the Maryland-Virginia border on his way to the airport rather than by his alleged participation in Seabrooks' travel in interstate commerce. Accordingly, Jackson's conviction on the Travel Act charge must be reversed.
 
 
 15
 In view of the above, the judgment of the district court finding Jackson guilty of count I of the indictment is affirmed. That part of the judgment finding Jackson guilty of count II, the Travel Act charge, is reversed and remanded with instructions to vacate that part of the judgment and to return to him that part of the fine imposed for his conviction under count II.
 
 
 16
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART WITH INSTRUCTIONS.
 
 
 
 [1]
 Jackson appeared at the airport five minutes after Seabrooks' second call. Reed testified that it would have taken Jackson from forty-five minutes to an hour to travel from Jackson's home to the airport