850 F.2d 690
 25 Fed. R. Evid. Serv. 1444
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ervin Proctor JOHNSON, Defendant-Appellant.
 No. 87-5668.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 4, 1988.
Decided: June 15, 1988.
 
 Todd C. Conormon, Assistant Federal Public Defender (William E. Martin, Federal Public Defender, on brief), for appellant.
 J. Douglas Wilson (Samuel Rosenthal, Chief, Appellate Section, Criminal Division, United States Department of Justice; Samuel T. Currin, United States Attorney, on brief), for appellees.
 Before WIDENER and CHAPMAN, Circuit Judges, and EUGENE A. GORDON, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Ervin Proctor Johnson appeals from a drug conviction contending that the trial judge improperly limited cross-examination of an undercover officer, the prosecution's key witness, in violation of the Confrontation Clause of the Sixth Amendment. Johnson also asserts that, at the sentencing hearing, the trial judge improperly admitted hearsay evidence stemming from an unidentified informant, in violation of Johnson's due process rights. Finding no error, we affirm.
 
 I.
 
 2
 In 1987, a jury convicted Johnson of dealing drugs, and the trial judge sentenced him to 10 years in prison. At the jury trial, Officer Phillip Sweatt testified as the key witness for the prosecution. Sweatt operated as an undercover agent in the events in question. Sweatt testified that he had been told by an informant that a black male named Pete Johnson was selling cocaine from a trailer, in an area known as "Cocaine Hill." According to Sweatt's testimony, Sweatt and the informant drove to the trailer on October 21, 1986, at approximately 5:00 p.m. Sweatt walked to the trailer and, through a small window, observed an Indian male and a black male inside the trailer. While standing at the trailer window, Sweatt noticed that a small white car, driven by a black female, arrived at the scene. After negotiating with the individuals in the trailer, Sweatt purchased 1/8 ounce of cocaine from them. The entire transaction lasted 9 minutes. Finally, Sweatt identified the defendant, Ervin Johnson, as the black male in the trailer.
 
 
 3
 On cross-examination, Sweatt acknowledged that this investigation was his first undercover assignment, that it was dusk at the time of transaction, and that the lantern on the table beside the black male was needed to observe the appearance of the occupants. He further acknowledged that his investigative report stated that the suspects involved in this transaction were an unknown Indian male and an unknown black male referred to as "Pete", and that the report included no reference to the last name "Johnson." Finally, Sweatt acknowledged that the report did not mention a white care driven by a black female.
 
 
 4
 Defense counsel then referred Sweatt to his testimony in a prior proceeding in which the government sought to prosecute James Allen Jones. Sweatt acknowledged that, at a pretrial hearing in the Jones case, he unequivocally identified Jones as an individual who had sold him cocaine. Sweatt further acknowledged that at the pretrial hearing he testified that the dealer referred to himself as Allen Jones, and that he specifically remembered the dealer's deformed eye. Jones in fact had a deformed eye. Defense counsel, at this point, referred to Sweatt's investigative report in the Jones case, noting that the report did not mention the deformed eye. Sweatt indicated that he could not remember the contents of the report. Defense counsel then attempted to show Sweatt the relevant portions of the Jones report. The government objected and the court sustained the objection. Thereafter, the court prohibited defense counsel from making any specific reference to the Jones case. The court, however, permitted defense counsel to elicit from Sweat that, in general terms, he may have made an erroneous identification in a prior case. As his primary basis for appeal, Johnson contends that the trial judge's limitation of defense counsel's cross-examination of Sweatt violated the Confrontation Clause of the Sixth Amendment.
 
 
 5
 Johnson's second basis for appeal concerns the admission of hearsay evidence at his sentencing hearing. At the sentencing hearing, Sweatt testified that, two days prior to Johnson's trial, Johnson made a sale of cocaine to Sweatt's informant. According to Sweatt's testimony, he observed Johnson enter and leave the informant's residence. After Johnson departed the informant's residence, the informant told Sweatt that Johnson had sold him 1/8 ounce of cocaine. Sweatt conducted a field test on the substance and concluded it was in fact cocaine. Defense counsel then cross-examined Sweat regarding this incident. Johnsons contends that the admission of this evidence violated his due process rights.
 
 II.
 
 6
 The trial judge's limitation of defense counsel's cross-examination of Sweatt is the primary basis of this appeal. Defense counsel had intended to prove that Sweatt had identified James Allen Jones in a prior case as the man who had sold him cocaine, that new evidence had been presented to the Government which caused Sweatt to question his initial identification of Jones, and that, as a result, the government dropped the charges against Jones. In addition, according to the defense, an examination of Sweatt's investigative report in the Jones case demonstrated that two facts Sweatt had referred to during his testimony were not included in the report. The report did not mention a deformed eye. Nor did the report indicate that the dealer had identified himself as Allen Jones, indicating instead that the dealer identified himself only as "one of the Jones boys". Johnson contends that the limitation on defense counsel's cross-examination of Sweatt violated his constitutional right to confront witnesses against him. The issue is whether the trial judge violated the Confrontation Clause by precluding, on cross-examination of undercover agent Sweatt, inquiry into the specific details of a prior instance in which Sweatt may have (1) misidentified the defendant in a drug case, and may have (2) testified to matters he did not in fact observe, as evidenced by the inclusion in his testimony of critical details not found in his investigative report.
 
 
 7
 Confrontation Clause cases fall into two broad categories: "cases involving the admission of out-of-court statements and cases involving restrictions imposed by law or by the trial judge on the scope of cross-examination." Delaware v. Fensterer, 474 U.S. 15, 18 (1985). "The first category reflects the Court's longstanding recognition that the 'literal right to confront the witness at the time of trial ... forms the core values furthered by the Confrontation Clause.' " Id. (quoting California v. Green, 399 U.S. 149, 157 (1970)). See e.g. Cruz v. New York, --- U.S. ----, 107 S.Ct. 1714, 95 L.Ed. 162 (1987); Lee v. Illinois, 476 U.S. 530 (1986); Bruton v. United States, 391 U.S. 123 (1968). The second category involves cases in which the court allowed some cross-examination of a prosecution witness, but did not allow defense counsel to "expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." Davis v. Alaska, 415 U.S. 308, 318 (1974). Accord Fensterer, 474 U.S. at 19. The issue in the instant case involves the second category of cases.
 
 
 8
 As the Court stated in Davis, "[c]onfrontation means more than being allowed to confront the witness physically":
 
 
 9
 [T]he cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. One way of discrediting the witness is to introduce evidence of a prior criminal conviction of that witness.... A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony'.
 
 
 10
 415 U.S. at 316. In the wake of Davis, many courts have found confrontation clause violations where the trial court precluded a cross-examiner from probing the bias of a witness. See e.g. Delaware v. Van Arsdall, 475 U.S. 673 (1986) (refusal to permit cross-examination into whether witness received favors from government in exchange for testimony violated Confrontation Clause); Davis, 415 U.S. 308 (1974) (refusal to allow cross-examination into witness' juvenile burglary offense, for which witness was on probation, violated Confrontation Clause); Hoover v. State of Maryland, 714 F.2d 301 (4th Cir.1983) (refusal to permit inquiry into key prosecution witness' subjective understanding of his bargain with government violated Confrontation Clause); Chavis v. State of North Carolina, 637 F.2d 213 (4th Cir.1980) ("the trial court's limitation on cross-examination ... to uncover the special treatment that ... [witnesses] received constituted error of constitutional magnitude").
 
 
 11
 It does not follow, however, that the Confrontation Clause prevents a trial judge from imposing any limits on the impeachment of a prosecution witness:
 
 
 12
 On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.
 
 
 13
 Van Arsdall, 475 U.S. at 679 (emphasis added). Accord Crane v. Kentucky, 476 U.S. 683, 689-90 (1986). See Van Arsdall 475 U.S. at 685 (White, J., concurring) (emphasized trial judge's discretion to place reasonable limitations on cross-examination); United States v. Crockett, 813 F.2d 1310 (4th Cir.1987) ("a court can place reasonable limits on cross-examination to reduce potential confusion of the jury and potential prejudice to a codefendant"). See also McCormick on Evidence, Sec. 40 (3d Ed.1984) ("impeachment is not a central matter, and the trial judge, though he may not deny a reasonable opportunity ... to prove the bias of a witness, has a discretion to control the extent to which the proof may go"). In this regard, the trial judge may "exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability--even if the defendant would prefer to see that evidence admitted." Crane, 476 U.S. at 690. Ultimately, the "Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Fensterer, 474 U.S. at 20 (1985). See Pennsylvania v. Ritchie, --- U.S. ----, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); Van Arsdall 475 U.S. at 679. See also Crane, 476 U.S. at 690 (Constitution guarantees criminal defendants a "meaningful opportunity to present a complete defense). Cf. Fensterer 474 U.S. at 22 ("Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony"); Ritchie, 107 S.Ct. 989, 94 L.Ed.2d 40 ("Normally, the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses").
 
 
 14
 Accordingly, the following factors bear on whether a trial judge's limitation of cross-examination violates the Confrontation Clause: (1) whether defense counsel's purported cross-examination seeks to expose the bias of the witness, Davis, 415 U.S. at 316; (2) whether the trial judge precludes all cross-examination on the matter or merely places limits on the examination, Van Arsdall, 475 U.S. at 677; (3) whether the risk of, among other things, jury confusion, harassment, or prejudice in allowing the examination substantially outweighs the the relevance of the examination, Id. at 679; and (4) whether the trial judge, in limiting the cross-examination, relies on "evidentiary rules that themselves serve the interests of fairness and reliability....", Crane 476 U.S. at 690. Applying these factors to the instant case, the court determines that the trial judge did not violate the Confrontation Clause by precluding defense counsel's inquiry into the specific details of a prior case in which Officer Sweat may have either bolstered his testimony or misidentified the defendant.
 
 
 15
 First of all, the proposed inquiry did not relate directly to the bias of Sweatt. Inquiry into Sweatt's identification and testimony in the Jones case is relevant to bias only in the general sense of demonstrating that, when testifying against a defendant whom Sweatt was responsible for bringing to trial, Sweatt's is pro-prosecution. This general form of bias is readily distinguishable from the case-specific forms of bias that "relate directly to issues or personalities in the case at hand." Davis, 415 U.S. at 316. This is not a case where defense counsel sought to cross-examine a witness on whether the government had promised the witness favors in exchange for the witness' testimony. See e.g. Van Arsdall, 475 U.S. 673. Nor is this a case where defense counsel sought to demonstrate that a witness' criminal record and proximity to the scene of the crime suggested that the witness, to exonerate himself, was predisposed to incriminate the defendant. See e.g Davis 415 U.S. 308.
 
 
 16
 Second, the trial judge did not preclude all inquiry into the prior matter. Before the government objected, defense counsel had already elicited from Sweatt that he had identified Jones at the hearing, he had no doubt about his identification, he remembered Jones' deformed eye, and he could not recall that his investigative report did not mention the deformed eye. After the court sustained the objection, defense counsel was permitted to inquire, in general terms, whether Sweatt had misidentified a defendant in the past. In this regard, defense counsel elicited from Sweatt that "other evidence" indicated that he may have been wrong about an identification in the past. Finally, the trial judge permitted extensive cross-examination of Sweatt as to the events in the instant case.
 
 
 17
 Third, under the evidentiary balancing test, the relevance of the purported cross-examination is substantially offset by the risks of delay, confusion, and overuse. The proposed cross-examination relates to a prior, collateral matter. Extensive cross-examination into this collateral matter could result in a mini-trial on the details of a prior case, delaying the trial at hand and distracting the jury. Also, the jury could overuse the collateral evidence, leaping to the conclusion that, because Sweatt may have misidentified a defendant in the past, and because Sweatt may have exaggerated his testimony in the past, he probably misidentified Johnson and exaggerated his testimony in the instant case. The right to confront witnesses is "not so broad 'as to deprive the district court of all discretion in limiting needless or confusing inquiry into collateral matters.' " United States v. Bodden, 736 F.2d 142, 145 (4th Cir.1984) (quoting United States v. Cole, 622 F.2d 98 (4th Cir.1980)). See United States v. Crockett, 813 F.2d 1310 (4th Cir.1987) (within trial judge's discretion to limit as "too remote" cross-examination into witness' earlier drug arrest).
 
 
 18
 Fourth, in limiting the cross-examination of Sweatt, the trial judge relied on Fed.R.Evid. 608(b):
 
 
 19
 Specific instances of the conduct of a witness for the purpose of attacking or supporting the witness' credibility or supporting the witness' credibility, other than the conviction of a crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness....
 
 
 20
 To prevent an endless sequence of impeachment evidence, Rule 608(b) prohibits the use of extrinsic evidence to impeach a witness about a collateral matter. Rule 608(b) recognizes, however, that the relevance of collateral matters bearing directly on a witness' veracity may outweigh the risk of distracting and confusing the jury. In this regard, Rule 608(b) grants the trial judge the discretion to permit cross-examination on collateral matters relating to the witness' character for truthfulness. The Rule thus accounts for concerns about judicial economy and jury distraction, while at the same time recognizing litigants' interest in discrediting an untruthful witness. Ultimately, the Rule "serves the interests of fairness and reliability," and a proper application of the rule therefore suggests the absence of a Confrontation Clause violation.
 
 
 21
 In the instant case, the trial judge acted within his discretion under Rule 608(b) in limiting defense counsel's attempt to cross-examine Sweatt on the Jones case. While a trial judge should ordinarily allow cross-examination on a prior incident directly related to truthfulness, such as where the witness had been patently deceitful, a trial judge's has the greatest discretion when the incident, as in the present case, is only inferentially related to truthfulness. Sweatt may have misidentified the defendant; Sweatt may have intentionally exaggerated his testimony. On the other hand, Sweatt may have properly identified Jones as the culprit, and the government could have dropped the case for reasons unrelated to the reliability of Sweatt's identification. Also, Sweatt may have testified only to matters he actually observed in the Jones case, and the omissions in his investigative report could have been, just that, omissions. Ultimately, the trial judge would have had to admit considerable testimony on the Jones case before the jury could have fairly assessed the import of the Jones case on Sweatt's truthfulness. To avoid distracting the jury with this "side-show", the trial judge limited the cross-examination to general questions on whether Sweatt had misidentified a defendant in the past. The trial judge acted within his discretion under Rule 608(b).
 
 III.
 
 22
 Johnson also argues that the trial court violated his due process rights by admitting hearsay evidence indicating that he made a post-indictment narcotics sale. The Supreme Court has stated, however, that at the sentencing hearing the trial judge may "conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." United States v. Tucker, 404 U.S. 443, 446 (1972). In addition, Congress has provided that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence." 18 U.S.C. Sec. 3661.
 
 
 23
 Sweatt testified that, two days before Johnson's jury trial, he observed Johnson enter and leave a police informant's residence. According to Sweatt's testimony, the informant told him that Johnson, on this occasion, had sold the informant 1/8 ounce of cocaine. Sweatt conducted a field test on the substance and concluded that it was in fact cocaine. Sweatt did not reveal the name of the informant. Defense counsel then had an opportunity to cross-examine Sweatt regarding the incident and to elicit that Sweatt had not actually seen the transaction take place. Under these circumstances, the district judge could properly consider the evidence and give it whatever weight it deserved.
 
 IV.
 
 24
 The trial court did not violate Johnson's rights under the Confrontation Clause by limiting defense counsel's cross-examination of agent Sweatt regarding a prior, unrelated court proceeding. Furthermore, the trial court did not violate Johnson's due process rights by considering, at the sentencing phase, hearsay evidence implicating Johnson in a post-indictment drug deal.
 
 
 25
 AFFIRMED.